**GARY MOLLOY and CHRISTA MOLLOY, Appellants/Plaintiffs**

**v.**

**INDEPENDENCE BLUE CROSS; QCC INSURANCE CO., d/b/a BLUE CROSS BLUE SHIELD OF THE VIRGIN ISLANDS; BLUE CROSS BLUE SHIELD ASSOCIATION; BLUE CROSS BLUE SHIELD OF PUERTO RICO and MEDICAL AIR SERVICES ASSOCIATION INTERNATIONAL, Appellees/Defendants**

S. Ct. Civil No. 2009-0102

Supreme Court of the Virgin Islands

January 9, 2012

155

157

158

161

163

LEE J. ROHN, ESQ., Rohn & Carpenter, LLC, St. Croix, USVI, *Attorney for Appellants*.

ANDREW C. SIMPSON, ESQ., Andrew C. Simpson, P.C., St. Croix, USVI, *Attorney for Blue Cross Appellees*.

MICOL L. MORGAN, ESQ., Ogeltree, Deakins, Nash, Smoak & Stewart, LLC, St. Thomas, USVI, *Attorney for Appellee Medical Air Services Ass'n Int'l*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(January 9, 2012)

CABRET, *Associate Justice*. In this case, Gary and Christa Molloy's ("the Molloys") newborn son, D.M., needed to be air evacuated to Miami

due to complications caused by his premature birth. Despite the fact that the Molloys were insured by Blue Cross Blue Shield of the Virgin Islands ("BCBSVI") and Medical Air Services Association International ("MASAI") for air evacuation services, neither company provided D.M. with timely air evacuation services. The Molloys sued both insurance companies, and other Blue Shield companies related to BCBSVI, alleging assorted tortious injuries and breach of contract claims, including a claim for false advertisement, in light of the appellees' failure to provide their son, D.M., with air ambulance services following his premature birth. They asserted these claims both on their own behalf and on behalf of D.M. After permitting discovery concerning the court's jurisdiction, the trial court dismissed one of the defendants, Blue Cross Blue Shield Association ("BCBSA"), from the case for lack of personal jurisdiction. Following that dismissal, the Molloys did not prosecute their case for two years and the Superior Court on its own dismissed the Molloys' claims for failure to prosecute, but permitted D.M.'s claims for injuries to continue. After D.M.'s claims were settled, the Molloys appealed, arguing, among other things, that the Superior Court (1) erred by dismissing the claims against BCBSA for lack of personal jurisdiction, and (2) abused its discretion by dismissing the Molloys' claims for failure to prosecute. For the reasons that follow, we reverse the Superior Court's April 25, 2005 order dismissing BCBSA for lack of personal jurisdiction in part, reverse the Superior Court's May 8, 2007 order dismissing the Molloys' claims for failure to prosecute in its entirety, and remand the case for further proceedings in accordance with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Immediately after D.M. was born prematurely on August 24, 1999, his treating physician informed the Molloys, D.M.'s parents, that there were no appropriate facilities in the Virgin Islands to provide D.M. the care he needed, and suggested that they immediately airlift him to Miami Children's Hospital to prevent deterioration of his precarious health. BCBSVI (collectively with other non-MASAI defendants, the "Blue Cross Defendants"), a Philadelphia based corporation licensed to do business in the Virgin Islands that insured the Molloys, allegedly failed to issue the necessary approval to permit D.M. to be transported to Miami in a timely fashion. Likewise, MASAI, which insured the Molloys independently of the Blue Cross Defendants, also allegedly failed to

 

provide air ambulance service to D.M. in a timely fashion. D.M. was transported to Miami three days after his birth, on August 27, 1999, through transportation arranged by Miami Children's Hospital.

On April 26, 2000, the Molloys, on their own behalf and on behalf of D.M., filed a complaint against the appellees. Count I of the complaint alleged the appellees acted negligently and caused D.M. physical harm, brain damage, mental anguish and pain and suffering. Count II alleged that the appellees intentionally inflicted emotional harm on the Molloys. Count III alleged negligent infliction of emotional harm on the Molloys. In Count IV, both the Molloys and D.M. alleged a breach of the insurance contract. And in Count V, both the Molloys and D.M. alleged bad faith insurance practice. Count VI sought damages for false advertisement, and Count VII sought punitive damages.

Thereafter, the parties engaged in discovery, including discovery aimed at the question of personal jurisdiction over BCBSA, the licensor of the Blue Cross brand name. On March 22, 2001, the Molloys served Blue Cross Blue Shield of Puerto Rico ("BCBSPR") with interrogatories that sought broad disclosure of information about BCBSPR that the Molloys believed was relevant to BCBSA's relationship with BCBSPR, including information concerning BCBSPR's direct contacts with the Virgin Islands. BCBSPR, which had conceded the Superior Court's exercise of personal jurisdiction over itself, responded by answering some of the questions and objecting to others on the ground that they were irrelevant to the Superior Court's exercise of personal jurisdiction over BCBSA. The Molloys moved the Superior Court to compel responses to the unanswered questions. The Superior Court granted that motion in part on November 8, 2004, permitting the Molloys to obtain answers to the questions that it determined were relevant to the relationship between BCBSA and BCBSPR, but the court refused to grant the motion on those questions it felt were irrelevant to the relationship, including the questions that dealt with BCBSPR's direct contacts with the Virgin Islands.

BCBSA subsequently moved to dismiss based on a lack of personal jurisdiction. On April 25, 2005, the Superior Court granted that motion, reasoning that it could not exercise personal jurisdiction over BCBSA because that entity did not insure the Molloys, was not licensed to do business in the Virgin Islands, was not connected to the claim for air ambulance services, and did not have an office or any real estate in the Virgin Islands. Therefore, the court concluded, BCBSA was not subject to

personal jurisdiction under the provisions of the Virgin Islands long arm statute which provides for personal jurisdiction over a foreign party that "transacts any business" or "contracts to provide services or things" in the Virgin Islands.[1] Based on the same evidence, the court also determined that BCBSA lacked the minimum contacts with the Virgin Islands necessary to permit the court to exercise jurisdiction under the Due Process Clause of the Fourteenth Amendment. After the court dismissed the claims against BCBSA, the case went dormant for almost two years, with no filings from any party. This period of dormancy was interrupted by a sua sponte March 19, 2007 order by the Superior Court requiring the Molloys to move the case forward within thirty days or face dismissal for failure to prosecute. The Molloys made no filings and the docket reflected no activity within the thirty day period and the Superior Court dismissed the case with prejudice on May 8, 2007.

On May 21, 2007, the Molloys filed a motion to vacate the dismissal, and on July 9, 2007, the Superior Court held a hearing to consider the motion. At the hearing, the Molloys' attorney indicated that the failure to respond to the March 19, 2007 order was due to an inadvertent error caused by new staff in the attorney's office. Except for the attorney's statements in open court, the Molloys never presented any evidence reinforcing this claim.

On May 28, 2008, the Superior Court denied the motion to vacate as it related to the Molloys' claims, but granted it as to D.M.'s claims and ordered the Molloys to submit a petition for appointment of a Guardian Ad Litem for D.M.'s interests. D.M.'s claims were subsequently settled, and the Superior Court approved the settlement agreement and dismissed the case on September 19, 2009. On September 29, 2009, the Molloys submitted a timely notice of appeal.[2] In this appeal, the Molloys argue that the Superior Court erred (1) by not compelling BCBSPR to answer

---

[1] V.I. CODE ANN. tit. 5, § 4903.

[2] In their notice of appeal and in their civil information sheet, the Molloys presented an issue about the propriety of the appointment of the Guardian Ad Litem for D.M., but failed to brief or pursue that issue before this Court. This Court previously disposed of any questions surrounding D.M. by dismissing him from this appeal, noting that the Molloys failed to challenge the appointment of his Guardian Ad Litem, that his Guardian is not a party to this appeal, and that D.M. already settled all claims against the appellees. See Molloy v. Independence Blue Cross, S.Ct. No. 2009-0102, 2012 V.I. Supreme LEXIS 6, at *2-3 (V.I. Aug. 23, 2010).

certain interrogatories, as they were relevant to the relationship between BCBSPR and BCBSA and thus BCBSA's contacts with the Virgin Islands; (2) by finding it lacked personal jurisdiction over BCBSA, even though that entity has sufficient contacts to meet both the statutory and constitutional requirements for jurisdiction; and (3) by dismissing the Molloys' claims for failure to prosecute without making explicit findings on all of the six factors as required by *Halliday v. Footlocker Specialty, Inc.*, 53 V.I. 505 (V.I. 2010) before dismissal as a sanction is permitted.

## II. JURISDICTION AND STANDARD OF REVIEW

■■ We have jurisdiction over this civil appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." Although neither the order dismissing BCBSA nor the Molloys' claims was a final order, the dismissal of the case following the settlement with D.M. was, as it left nothing for the court to do except enforce its judgment. *Estate of George v. George*, 50 V.I. 268, 274 (V.I. 2008). *See also Caribbean Healthways, Inc. v. James*, 55 V.I. 691, 696-97 (V.I. 2011) (final judgment is one that ends the litigation on the merits and leaves nothing to do but execute the judgment) (citing and quoting *Rojas v. Two/Morrow Ideas Enters., Inc.*, 53 V.I. 684, 691 (V.I. 2010)).

■ This Court reviews a Superior Court's ruling on a motion to compel answers to discovery for abuse of discretion. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir. 1990). Likewise, this Court reviews a dismissal for failure to prosecute for abuse of discretion. *Halliday v. Footlocker Specialty, Inc.*, 53 V.I. 505, 510 (V.I. 2010) (citing *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984)). "A [trial] court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *United States v. Thompson-Riviere*, 561 F.3d 345, 348 (4th Cir. 2009). To the extent the review implicates an interpretation of law, however, we review that interpretation *de novo. Phillips v. People*, 51 V.I. 258, 280 (V.I. 2009). Because of the trial court's broad discretion to control discovery, this Court will only find an abuse of discretion in

reviewing the denial of a motion to compel where the appellant makes the "clearest showing that denial of discovery result[ed] in actual and substantial prejudice" to his case. *Hallett*, 296 F.3d at 751; *see also Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 281 (3d Cir. 2010).

We apply a *de novo* standard of review to a determination by the Superior Court that it lacked personal jurisdiction. *See Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 176 (3d Cir. 2006) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). In reviewing the Superior Court's determination, we construe all disputed facts in favor of finding personal jurisdiction. *Id.* (citing *Pinker*, 292 F.3d at 368.) However, to the extent the Superior Court made findings of fact regarding personal jurisdiction from an evidentiary hearing, we accept those findings unless they are shown to be clearly erroneous. *Id.* (citing *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998)).

## III. DISCUSSION

### A. The Superior Court did not abuse its discretion by denying the Molloys' motion to compel interrogatories propounded to BCBSPR.

A motion to compel is controlled by Federal Rule of Civil Procedure 37(a),[3] which permits the Superior Court to compel any person to answer objected to or inadequately answered discovery so long as it is within the permissible scope of discovery, or to issue a protective order under Rule 26(c) to permit the objection to stand. Federal Rule 26(b)(1) permits a party to discover "any nonprivileged matter that is relevant to any party's claim or defense," even information that is not admissible at trial, so long as the discovery is "reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1).

In this case, the Molloys challenge the Superior Court's findings that six of their interrogatories to BCBSPR were irrelevant and thus outside the broad scope of discovery envisioned by Federal Rule 26(b)(1). The six interrogatories it refused to compel asked:

---

[3] The Superior Court Rules make the Federal Rules of Civil Procedure 26 through 37 applicable for the purposes of discovery in all civil cases. *See* SUPER. CT. R. 39.

169

■■■■■■ ■■■■■■■■ ■■■■■■

Interrogatory 2: Set forth the name and address of each individual or entity serving as Board of Director, Officer, or shareholder of defendant Blue Cross Blue Shield of Puerto Rico during the past 5 years.

Interrogatory 3: State whether you have ever been licensed to transact business in the Virgin Islands, and if so, set forth the dates, complete business name in which the license was issued and stated purpose of the business.

Interrogatory 12: Set forth the amount of revenue generated on your behalf in the United States Virgin Islands during the past 3 years, setting forth the name and address of the company, the applicable dates and identity of each person with knowledge of such information.

Interrogatory 13: Set forth the meeting, visit, appointment, contact, consultation, interview, conference or physical presence of any of your agents or employees, in the United States Virgin Islands during the past 3 years, setting forth the date, location, name, title and address of each person in attendance and the purpose, nature and substance of each meeting.

Interrogatory 17: State whether you advertised any of your products and/or services in the United States Virgin Islands during the past 3 years, and, if so, state the amount of money expended for advertising during that time period and a full description of the advertising.

Interrogatory 18: State whether you, or anyone on your behalf, was authorized or permitted to solicit business on your behalf in the United States Virgin Islands during the past 3 years, and if so, identify the name of the person or entity, set forth the address, all actions taken on your behalf, whether any compensation was paid for such solicitation, the amount paid, the applicable dates.

(Appellant Br. 9.) BCBSPR objected to each interrogatory on relevancy grounds and refused to answer. The Superior Court refused to compel answers to these six questions because BCBSPR itself admitted that the Superior Court had personal jurisdiction over it. Therefore, the Superior Court reasoned that the interrogatories which involved BCBSA's direct contact with the Virgin Islands or its oversight authority of BCBSPR were relevant,

170

but that these six questions, which dealt with BCBSPR's direct contacts with the Virgin Islands, were not relevant.

■ We agree with the Superior Court that that these interrogatories are not relevant to the issue of the Superior Court's personal jurisdiction over BCBSA. To show relevance, the Molloys argue that

> BCBSA was the 'governing body' for the group of independently owned and operated Blue Cross or Blue Shield corporations, including BCBSVI and BCBSPR . . . . The interrogatories in question were designed to reveal the kinds of contacts that BCBSA had with the Virgin Islands through its relationship with BCBSPR.

(Appellant Br. 11.) However, the Molloys fail to show how any of the six interrogatories deal with the relationship between BCBSA and the Virgin Islands or the relationship between BCBSA and BCBSPR. Instead, the questions deal directly with BCBSPR's contacts with the Virgin Islands. The Molloys also failed to explain how BCBSPR's contacts with the Virgin Islands are in any way related to BCBSA's relationship with BCBSPR or would tend to lead to admissible evidence about that relationship. Accordingly, we find that the Molloys failed to make the required showing that the Superior Court abused its discretion in denying this discovery.

However, even if we were to accept that the questions were relevant, the Molloys' argument attempting to show actual and substantial prejudice is one sentence long: "The Superior Court's order denying Appellants access to the information sought by the above interrogatories left [sic] contributed to certain gaps in proof relating to the motion to dismiss." (Appellant Br. 11.) The Molloys do not assert that they did not have access to this information from other sources, or that they were incapable, or not permitted, to ask BCBSA directly about any relationship it might have to BCBSPR and its alleged contacts to the Virgin Islands. They do not make any showing that the "gaps in proof" were the cause of the lower court's decision to decide the jurisdictional question against them. They do not explain how these "gaps" fit into the framework of their allegations of personal jurisdiction. Furthermore, even if these "gaps" were the cause of the lower court's decision, the Molloys only argue that the order refusing to compel the answer to these six interrogatories "contributed to" the gaps, rather than being their cause.

■ Additionally, one key facet of the showing of actual and substantial prejudice is whether the trial court's order "made it impossible to obtain

crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible." *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 818 (3d Cir. 1982) (quoting *Eli Lilly & Co. v. Generix Drug Sales, Inc.*, 460 F.2d 1096, 1105 (5th Cir. 1972)). The Molloys do not indicate why they would have been unable to gain the information about the relationship between BCBSA and BCBSPR from the depositions of BCBSA or BCBSPR representatives or from the interrogatories propounded to BCBSA. Therefore, the Molloys have failed to carry their burden of showing actual and substantial prejudice, and we affirm the trial court's November 8, 2004 order denying the motion to compel.

## B. The Superior Court erred by dismissing BCBSA for lack of personal jurisdiction as to Count VI.

■ Personal jurisdiction is the authority of a court to exercise jurisdiction over a party before it. *See* BLACK'S LAW DICTIONARY 930 (9th ed. 2009). A defendant may challenge a court's exercise of personal jurisdiction in a pre-answer motion under Federal Rule of Civil Procedure 12(b)(2). The plaintiff bears the ultimate responsibility to prove by a preponderance of the evidence that the trial court may exercise personal jurisdiction over the out-of-state defendant. *Unlimited Holdings, Inc. v. Bertram Yacht, Inc.*, 49 V.I. 1002, 1006 (D.V.I. 2008). However, at the motion to dismiss stage of the litigation, the burden on the plaintiff depends on the actions a trial court takes in disposing of the motion.

■ If the trial court holds an evidentiary hearing on the issue of personal jurisdiction, then the plaintiff must come forward with evidence to prove the court's jurisdiction by a preponderance of the evidence. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). At a 12(b)(2) factual hearing, the trial court may accept evidence, weigh the facts, and determine disputed factual issues, including credibility determinations. *Serras v. First Tenn. Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

■ However, if the trial court does not hold an evidentiary hearing to determine the motion to dismiss based on personal jurisdiction, the plaintiff is only required to establish a prima facie case for personal jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007); *Unlimited Holdings, Inc.*, 49 V.I. at 1006; *In re Manbodh Asbestos Litigation II*, 47 V.I. 267, 277 (V.I. Super. Ct. 2005). *See generally* 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL

PRACTICE AND PROCEDURE 1351 (3d ed. 2004). "Under this standard, it is plaintiff's burden to demonstrate the existence of every fact required to satisfy 'both the forum's long-arm statute and the Due Process Clause of the Constitution.'" *United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 987 F.2d 39, 44 (1st Cir. 1993) (quoting *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992)). When the Superior Court makes that prima facie determination, it must accept as true all of plaintiff's factual allegations that are supported by affidavits or other competent evidence which would be admissible at trial and must resolve all factual disputes in the plaintiff's favor. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330, 51 V.I. 1219 (3d Cir. 2009); *see also Ford v. Amber Cape Prods., LLC*, No. 2009-144, 2010 U.S. Dist. LEXIS 105022, at *5 (D.V.I. Sept. 30, 2010). Here, the record reveals that the Superior Court held no evidentiary hearing on the question of personal jurisdiction in this case, and thus the Molloys need only have made a prima facie showing by competent evidence to permit the Superior Court to exercise personal jurisdiction over BCBSA.[4]

 The Virgin Islands has a two-part test for a court to exercise personal jurisdiction. *See In re Najawicz*, 52 V.I. 311, 336 (V.I. 2009). First, the plaintiff must show that there is a prima facie case for personal jurisdiction over the defendant under the Virgin Islands long arm statute, codified at title 5, section 4903 of the Virgin Islands Code. *See id.* Second, the plaintiff must make a prima facie showing that the defendant's due process rights would not be violated by being haled into court in the Virgin Islands. *See id.* The Superior Court determined that the Molloys failed to produce sufficient evidence to show every fact necessary to

---

[4] We note that the Superior Court held the Molloys to the wrong standard, requiring them to prove personal jurisdiction by a preponderance of the evidence without holding an evidentiary hearing. Instead, as we stated above, the Superior Court should only have required the Molloys to make a prima facie showing supported by competent evidence. Additionally, the trial court, after reciting the undisputed facts presented by both parties' submissions, focused on what contacts the defendants lacked, instead of analyzing and considering what contacts BCBSA had with the Virgin Islands. *See Metcalfe*, 566 F.3d at 332 (holding that "the proper focus . . . should be on whether [the out-of-state defendant] engaged in any act that might" provide the court with jurisdiction). Notwithstanding these errors, because our review is plenary, we apply the standard the trial court should have used and affirm if we find the dismissal warranted under our independent analysis. *United Corp. v. Tutu Park, Ltd.*, 55 V.I. 702, 708 n.3 (V.I. 2011) (citing *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008)); *West v. Bell*, 550 F.3d 542, 554 (6th Cir. 2008).

permit it to exercise personal jurisdiction based on either the long arm statute or the due process requirement. We turn first to the Superior Court's analysis under the long arm statute and then discuss the Superior Court's constitutional analysis.

### 1. The Superior Court erred by finding that the Molloys failed to satisfy the requirements of the Virgin Islands Long Arm Statute as to Count VI.

■ The Virgin Islands long arm statute specifies several bases for exercising personal jurisdiction over an out-of-state individual, or corporation, in the Virgin Islands:

> (a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's
>
> > (1) transacting any business in this territory;
> > (2) contracting to supply services or things in this territory;
> > . . . .
> > (4) causing tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory;.
> > . . . .
>
> (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

5 V.I.C. § 4903. Therefore, the correct procedure is for a court to determine (1) whether the defendant's contacts meet one of categories under section 4903(a) and then (2) whether the plaintiff's claim "arises from" that contact. *In re Manbodh Asbestos Litigation II*, 47 V.I. at 289. *See also Godfrey v. Int'l Moving Consultants, Inc.*, 18 V.I. 60, 68 (D.V.I. 1980). The Molloys argue that they made a prima facie showing for personal jurisdiction over BCBSA based on sections 4903(a)(1), (2), and (4). Since section 4903 provides the court with authority to exercise personal jurisdiction on a per claim basis, each of the Molloys' claims must be separately analyzed to determine whether there is a basis under section 4903 to exercise personal jurisdiction over BCBSA. *See In re Manbodh Asbestos Litigation II*, 47 V.I. at 278.

 No court in the Virgin Islands has determined what it means to require that a claim is "arising from" the enumerated acts for the purposes of section 4903(b). However, the Third Circuit has addressed a similar requirement under the constitutional jurisdiction doctrine of specific jurisdiction that a claim must "arise out of" the defendant's contacts with the forum. *See O'Connor*, 496 F.3d at 320. In discussing that similar "arise out of" requirement of constitutional personal jurisdiction, the Third Circuit defined the term as requiring the claim to reasonably relate to the cause of action. *Id*. The court went on to note that

> [w]ith each purposeful contact by an out-of-state resident, the forum state's laws will extend certain benefits and impose certain obligations. . . . The relatedness requirement's function is to maintain balance in this reciprocal exchange. In order to do so, it must keep the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations. The causal connection can be somewhat looser than the tort concept of proximate causation but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable.

*Id*. at 323 (citations omitted). The Third Circuit's procedure under this standard is to determine whether the contact is the "but-for" cause of the action, and, if so, to then determine if the contact's substantive obligations and privileges are closely related to the cause of action. *Id*. at 322-25. We find this formulation helpful and persuasive to our interpretation of section 4903(b), and adopt it as the correct standard in determining whether a claim is one "arising from" one of the enumerated acts in section 4903(a). Therefore, in this case, the Molloys must provide a prima facie showing for each of their claims that (1) one of BCBSA's contacts with the Virgin Islands is a but-for cause of that claim; and (2) that the obligations and privileges that accompany that contact with the Virgin Islands are closely related to the cause of action.

 In this case, Counts II-V can be considered together as they are all based on the same factual predicate: that the Blue Cross Defendants were dilatory in providing air ambulance services to D.M., which caused the Molloys harm. *See O'Connor*, 496 F.3d at 318 n.3 ("We note that our usual practice is to assess specific jurisdiction on a claim-by-claim basis. However, it may not be necessary to do so for certain factually overlapping claims.") (citation and internal quotation marks omitted).

175

Count VI, however, sets forth an allegation that the advertisements issued by the Blue Cross Defendants for air ambulance services were misleading, and therefore has a separate factual predicate which must be considered separately.[5] We turn now to sections 4903(a)(1), (2), and (4) to determine whether the Superior Court erred by holding that the Molloys failed to set out a prima facie case for the exercise of personal jurisdiction over BCBSA for each claim.

### a. Jurisdiction over BCBSA is not proper under section 4903(a)(1), transacting any business in this territory.

 Turning first to whether the Molloys made a prima facie showing under section 4903(a)(1), transacting any business in this territory has been defined as "a term of art which means less than doing business but more than performing some inconsequential act. It requires that a defendant engage in some type of purposeful activity within the territory." *C & C/Manhattan v. Sunex Int'l, Inc.*, 42 V.I. 3, 8 (Terr. Ct. V.I. 1999) (quoting *Hommel v. Scott*, 35 V.I. 32, 35-36 (Terr. Ct. V.I. 1996)). A single act may constitute the transacting of business. *Id.* at 9.

In this case, the Molloys alleged that the Superior Court should have exercised jurisdiction through section 4903(a)(1)'s "transacting any business" language because they showed through competent evidence that BCBSA acted as an agent for BCBSVI before the United States Senate in arranging contracts to provide insurance for United States government workers in the Virgin Islands. Also, the Molloys provided competent evidence that BCBSA derives substantial income out of BCBSVI's licensing fees and royalties from both the contracts secured through the United States Senate and all other insurance policies BCBSVI issues. Acting as an agent for an insurance company in the Virgin Islands before the United States Senate on behalf of federal government workers in the Virgin Islands with the specific purpose of garnering contracts to cover Virgin Islands citizens qualifies as more than an inconsequential act, and indicates BCBSA's intent to transact business within the Virgin Islands. Additionally, BCBSA did not refute the Molloys' claims that BCBSA derives substantial revenue from Virgin Islands residents.

---

[5] Count I was a claim brought only by D.M., who is not a party before this Court, and is thus not implicated in this appeal. Count VII was a request for punitive damages, which is not an independent cause of action.

Therefore, we hold that BCBSA transacted business within the meaning of 4903(a)(1) in the Virgin Islands. *See Paradise Motors, Inc. v. Toyota De Puerto Rico, Corp.*, 314 F. Supp. 2d 495, 498 & n.4 (D.V.I. 2004) (finding that participation in some business dealings with the Virgin Islands along with receipt of substantial revenue qualified as transacting business).

■■ However, although the Molloys showed that BCBSA transacted business within the Virgin Islands, they failed to explain how any of their claims arise from these business transactions. As explained above, deciding whether a claim arises from a contact is a two step process: first we determine if the contact is a "but-for" cause for the claim and then we determine if the substantive obligations and privileges that accompany the contact are closely related to the action. *O'Connor*, 496 F.3d at 322-25. Here, the business transactions identified by the Molloys fail the initial "but-for" determination. A "but-for" cause is a "cause without which the event could not have occurred." BLACK'S LAW DICTIONARY 250 (9th ed. 2009). BCBSVI could have been dilatory in providing air ambulance services regardless of whether BCBSA had negotiated on behalf of BCBSVI with the United States Senate to cover workers not involved in this suit or accepted licensing fees from BCBSVI. *Cf. O'Connor*, 496 F.3d at 323 ("Thus, but for the mailing of the brochure, Mr. O'Connor never would have purchased a massage and he would not have suffered a massage-related injury."). The claims in the present case in no way arose from BCBSA's conduct before the Senate or from BCBSA's collection of licensing fees. Likewise, the Molloys failed to explain how either business transaction operated as a "but-for" cause of their alleged injury from misleading advertisements. Simply put, the Molloys provided the Superior Court with no link between the business BCBSA transacted within the Virgin Islands and the damages they allegedly suffered when BCBSVI was dilatory in providing air ambulance services to D.M. or through the advertisements BCBSA approved. Therefore, because the Molloys failed to provide sufficient factual allegations supported by competent evidence that would permit a finder of fact to rule in their favor, the Superior Court correctly determined that the Molloys failed to make out a prima facie case for personal jurisdiction over BCBSA through 4903(a)(1).

177

### b. Jurisdiction over BCBSA is proper under section 4903(a)(2), contracting to supply services or things in this territory, but only as to Count VI.

 The Molloys next argue that the statutory requirement for personal jurisdiction is satisfied under section 4903(a)(2), "contracting to supply services or things in this territory," because of the licensing agreement between BCBSVI and BCBSA. Contracting to supply services or things in this territory, for the purposes· of section 4903(a)(2), has been interpreted to include contracts entered into, or partially performed in, the Virgin Islands so long as the claim arises from the contract. *See Godfrey*, 18 V.I. at 68 ("[A]ll that is required by a literal interpretation of the statutory language is that the contract be performed in the Virgin Islands and that the cause of action arise out of the contract."); *In re Manbodh Asbestos Litigation II*, 47 V.I. at 290. *See generally Buccaneer Hotel Corp. v. Reliance Int'l Sales Corp.*, 17 V.I. 249, 253-59 (Terr. Ct. V.I. 1981) (explaining the application of section 4903(a)(2) and how it relates to the provision in· section 4903(a)(1) authorizing the assertion of jurisdiction based upon the transacting of business).

The Molloys argue that this requirement is met through the licensing agreement between BCBSA and BCBSVI because BCBSA promised to provide BCBSVI (1) consulting on financial and tax matters, (2) a framework for instituting a national discount card program, (3) telecommunications systems, and (4) a discount program for vendors to purchase equipment for use in the Virgin Islands. The Molloys also argue that BCBSA had the contractual right to review all advertisements used by BCBSVI locally. In their opposition to the motion to dismiss, the Molloys offered evidence that some of these services were utilized by BCBSVI in its Virgin Islands office. (J.A. 366-80 (deposition of Susan Sendlewski, a former associate of Independence Blue Cross).) Therefore, the contract was partially performed in the Virgin Islands. Moreover, the Molloys presented competent evidence that the services in the contract between BCBSA and BCBSVI were utilized in and on behalf of residents of the Virgin Islands. Accordingly, we hold that BCBSA contracted to provide services in this territory.

 Turning to the second requirement for valid exercise of jurisdiction under section 4903(a)(2), that the claim must "arise from" the contract as required in section 4903(b), the Molloys again failed to explain how the contractual provisions upon which they rely gave rise to

178

the claims in Counts II-V based on the failure to provide air ambulance services. Just as they did under section 4903(a)(1), the Molloys failed to establish the first part of the "arising from" test, the "but-for" requirement. The Molloys did not set out how BCBSVI was dilatory in providing air ambulances services because of the financial consulting, the national discount card program, the telecommunication system, or the vendor discount program from BCBSA. Once more, the Molloys failed to prove any connection between BCBSVI's dilatory actions and the services BCBSA contracted to provide in the Virgin Islands. Therefore, the Molloys failed to satisfy the "but-for" component of the test under section 4903(a)(2) for Counts II-V.

■■ ■■ However, as to Count VI, the false advertisement claim, the Molloys do satisfy the "arising from" test. The record discloses that the advertisements the Molloys claim were false would never have been circulated in the Virgin Islands but for their approval by BCBSA. Accordingly, the Molloys established the first requirement, the "but-for" test, of the "arising from" standard. As to the second part of the "arising from" standard, when a company advertises in the Virgin Islands, the laws of the territory place an obligation on the company not to circulate false or misleading advertisements. *See, e.g.*, 12A V.I.C. § 101 ("No person shall engage in any deceptive or unconscionable trade practice in the sale, lease, rental or loan or in the offering for sale, lease, rental, or loan of any consumer goods or services, or in the collection of consumer debts."). BCBSA contracted for the benefits of control over BCBSVI's advertisements in the Virgin Islands, and therefore accepted the obligation to ensure those advertisements were not misleading. Since the false advertisement claim arises directly from that obligation, and is also the "but-for" cause of the claim, we hold the Molloys presented a prima facie case that the false advertisement claim arises from the conduct in this forum, and thus provides a basis for personal jurisdiction under section 4903(a)(2).

### c. Alternatively, jurisdiction over BCBSA is proper under section 4903(a)(4), causing injury inside the territory by an act outside the territory as to Count VI.

■■ ■■ The final section of the long arm statute which the Molloys rely on, section 4903(a)(4), requires a two part showing: first, that BCBSA committed a tort outside the Virgin Islands causing an injury in

179

the Virgin Islands and, second, that the Molloys can "establish the existence of additional unrelated forum contacts, a plus factor," by showing, through one or more of the following that BCBSA has (1) regularly done business with or solicited business from the Virgin Islands, (2) engaged in any other persistent course of conduct in the territory, or (3) derived substantial revenue from goods or services consumed in the Virgin Islands. *In re Manbodh Asbestos Litigation II*, 47 V.I. at 281. "A court may consider each of these factors individually, or all three cumulatively, for the purposes of satisfying this step of the analysis." *Id.* (citing *Hedrickson v. Reg O Co.*, 17 V.I. 457, 463 (D.V.I. 1980)). "The conduct establishing the plus factor does not need to have any relationship with the tortious activity."[6] *Id.* (citing *Hendrickson v. Reg O Co.*, 657 F.2d 9, 12 (3d Cir. 1981)).

▮ In this case, the Molloys argue that they satisfy the requirements of section 4903(a)(4) only with regard to Count VI, the misleading advertisement count. They argue that BCBSA caused injury to the Molloys by approving misleading advertisements, and since BCBSA received substantial revenue from the licensure fees from BCBSVI, the Superior Court should have exercised jurisdiction over BCBSA. Indeed, in their opposition to BCBSA's motion to dismiss, the Molloys made a prima facie showing based on competent evidence that BCBSVI could not publish any advertising materials without BCBSA's approval, that

---

[6] Although section 4903(b) requires that the plaintiff show that a claim "arises from" the defendant's contact under section 4903(a) with the Virgin Islands, so long as the plaintiff makes the first required showing under section 4903(a)(4), that the defendant committed a tort and that the tort caused an injury in the Virgin Islands, a separate "arising from" analysis is unnecessary. *In re Manbodh Asbestos Litigation II*, 47 V.I. at 280-81. Under section 4903(a)(4), the plaintiff is required to show that the defendant committed a tort "causing" the injury here in the Virgin Islands. *See* 5 V.I.C. 4903(a)(4). Causation for a tort, often known as proximate causation, requires the plaintiff to show that the tort was both the "but-for" cause of the injury and "a substantial factor in bringing about the result." *Sealey-Christian v. Sunny Isle Shopping Ctr., Inc.*, 52 V.I. 410, 432 (V.I. 2009). The "arising from" test we have adopted from the *O'Connor* Court is a broader and more easily satisfied test than the proximate cause standard. *See O'Connor*, 496 F.3d at 323 ("The causal connection [between the contact and the claim] can be somewhat looser than the tort concept of proximate causation, but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable." (citation omitted)). Since section 4903(a)(4) requires the plaintiff to show proximate causation, which is a more demanding test than our "arising from" test, there is no need for a court to perform a separate "arising from" analysis to exercise personal jurisdiction under section 4903(a)(4).

180

BCBSVI did publish advertising materials, that those materials were false and that the Molloys suffered an injury in reliance on those materials in the Virgin Islands. BCBSA contested many of those facts, but because the Superior Court did not conduct an evidentiary hearing, we are required to accept the Molloys' factual allegations as true for the limited purpose of determining personal jurisdiction. *Metcalfe*, 566 F.3d at 330. Additionally, for the purposes of determining whether BCBSA derived substantial income in the Virgin Islands to meet the plus factor requirement, BCBSA admitted that it received between $50,000-$100,000 per year in licensing fees, plus a 1% royalty on all gross proceeds. Therefore, the Superior Court erred when it determined that the Molloys failed to set out a prima face case to assert statutory personal jurisdiction over BCBSA for Count VI. As set out above, however, statutory personal jurisdiction is only half of the complete personal jurisdiction analysis, and so we must turn next to whether the Superior Court correctly found that the Due Process Clause of the United States Constitution prevented it from exercising personal jurisdiction over BCBSA for Count VI.

## 2. The Superior Court erred by finding due process did not permit the court to exercise personal jurisdiction over BCBSA as it applies to Count VI.

██ The second half of the personal jurisdiction test requires a court to find that its exercise of personal jurisdiction over the defendant does not violate due process. *In re Najawicz*, 52 V.I. at 336. A court may constitutionally find that it has general jurisdiction, or the right to hear all cases against a defendant regardless of where or how they arise, if it finds that defendant has continuous and systematic contact with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). Alternatively, it may exercise specific personal jurisdiction, jurisdiction on a claim-by-claim basis, over a defendant if it finds the defendant has the requisite minimum contacts with the forum *and* the claim arises out of those contacts with the forum. *Id.* 413-14. If a court determines that there are sufficient contacts with the forum to warrant jurisdiction under either standard, it must still determine that exercising jurisdiction will comport with " 'fair play and substantial

justice.' "[7] *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 260 (3d Cir. 2000) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

In arguing both general and specific jurisdiction, the Molloys asserted the following contacts between BCBSA and the Virgin Islands, all of which are based on the license agreement between BCBSA and BCBSVI:[8] BCBSA had the right to inspect the facilities, books, operations and records of BCBSVI; BCBSA could require BCBSVI to keep specific amounts of money in reserve to ensure liquidity; BCBSA received yearly license fees and royalties from gross sales from BCBSVI; BCBSA could establish customer service procedures for BCBSVI; BCBSA had the right to receive reports on all operations from BCBSVI; BCBSA had to approve BCBSVI's advertisements; BCBSA approved BCBSVI's name; BCBSA acted as agent for BCBSVI in negotiations with the federal government on behalf of federal government workers; BCBSA allowed BCBSVI members access to a national discount plan; and BCBSA provided consulting services and telecommunication systems to BCBSVI.

We turn first to whether the contacts identified by the Molloys adequately set out a prima facie showing to establish general jurisdiction. To establish general jurisdiction, the nonresident's contacts must be

---

[7] Because we agree with the Superior Court that the Molloys failed to prove the requirements to exercise personal jurisdiction over BCBSA under the Virgin Islands long-arm statute for Counts II-V, we are not required to review whether the Molloys provided the necessary showing for those counts to exercise jurisdiction under the Due Process Clause of the Fourteenth Amendment. *See In re Najawicz*, 52 V.I. at 337.

[8] The Molloys also offer *Dickson v. Hertz*, 559 F. Supp. 1169, 19 V.I. 501 (D.V.I. 1983), as authority for exercising general jurisdiction based solely on the existence of a licensing agreement. *Dickson* held that, because the licensor and licensee were "a unified corporate entity," essentially the same company, the parent company could be considered present in the territory in such a way as to assert general jurisdiction. *Id.* at 1176. The most important consideration in *Dickson* was the amount of control the licensor had over the licensee's daily activities, including accepting pricing structures and control of all operational procedures. *Id.* In contrast, here, while BCBSA does exert some control over BCBSVI's customer service procedures, the Molloys did not indicate that BCBSA had any right to set prices, control whom BCBSVI may or may not insure, determine how it elects its managers or hires its officers, etc. The level of control exercised on the facts in the *Dickson* case is very distinguishable from that demonstrated in this case. *Compare Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 438, 445, 72 S. Ct. 413, 96 L. Ed. 485, 63 Ohio Law Abs. 146 (1952); *with Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

continuous and substantial. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). For a non-resident business entity, the contacts with the Virgin Islands should form a central part of the company's business. *See id.* at 438. Here, the Molloys failed to allege any facts that would have permitted the Superior Court to determine how "systematic" or "continuous" these contacts were; they identified what BCBSA is permitted to do under the license agreement with regards to BCBSVI, but did not identify how frequent, central, continuous or systematic these contacts were. Therefore, we hold that the Superior Court correctly refused to exercise general jurisdiction over BCBSA.

 Having established that the Superior Court correctly found that the Molloys failed to plead sufficient facts to justify the exercise of general jurisdiction over BCBSA, we turn next to whether the trial court should have exercised specific personal jurisdiction over BCBSA. At the outset, we note that the Blue Cross Defendants failed to argue to this Court that the Superior Court could not exercise specific personal jurisdiction over BCBSA. The failure to argue against a basis for exercising personal jurisdiction in an appellate brief waives any challenge to personal jurisdiction based on that argument. *See Employers Mut. Cas. Co. v. Bartiles Roofs, Inc*, 618 F.3d 1153, 1162 n.8 (10th Cir. 2010). Therefore, the Blue Cross Defendants have waived this argument and have conceded that the Superior Court may constitutionally exercise specific jurisdiction over BCBSA on Count VI. Even if they had not, however, we are persuaded that the Superior Court should have nonetheless exercised specific jurisdiction.

 To determine whether specific jurisdiction exists, we apply a three-part test. *O'Connor*, 496 F.3d at 317. "First, the defendant must have 'purposefully directed [its] activities' at the forum." *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros*, 466 U.S. at 414 and *O'Connor*, 496 F.3d at 317.) "And third, if the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.' " *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476). The purpose of the test is to ensure that the defendant has the requisite minimum contacts with a forum to receive "fair warning" that the defendant may be haled into court

 

in that forum to answer for its actions in relation to those contacts. *Burger King Corp.*, 471 U.S. at 472.

While the Molloys failed to allege facts sufficient to permit the Superior Court to determine how systematic or continuous BCBSA's contacts with the Virgin Islands were, they alleged sufficient facts to establish a prima facie case that BCBSA purposefully directed their activities at this forum. BCBSA licensed BCBSVI to use the Blue Cross Blue Shield name in its interaction with the Virgin Islands, provided some equipment and procedures to BCBSVI fully aware that they would be used not only in Philadelphia but also in BCBSVI's Virgin Islands office, and, most importantly, approved all advertisements from BCBSVI that BCBSA knew would be circulated in the Virgin Islands.

 The Molloys also alleged sufficient facts to establish a prima facie case that their claim arises out of one of these contacts. Where an out-of-state defendant accepts the obligation to approve advertisements bound for the Virgin Islands, the defendant likewise accepts the obligation to ensure they are not misleading or fraudulent. Above, we adopted the Third Circuit's approach to the "arising out of" requirement of specific personal jurisdiction as a guide for the appropriate approach to deal with the "arising from" requirement of section 4903(b). Indeed, we have already determined that the Molloys met the required "arising from" showing. *See supra* Section III.B.1.b. Therefore, because the "arising from" and "arising out of" tests are the same, we will not belabor the point by setting out that analysis at length here again.

 Finally, to determine whether the exercise of jurisdiction comports with fair play and substantial justice, courts analyze "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp.*, 471 U.S. at 477 (internal quotation marks and citation omitted). However, where the plaintiff has established that a defendant has the requisite minimum contacts and that his claim arises out of those contacts, the burden of proof shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* Here the Molloys established that BCBSA has the minimum requisite minimum contacts with the Virgin Islands and that

their claim in Count VI arose out of those contacts, and BCBSA has not argued any consideration which would make the exercise of jurisdiction fail to comport with fair play and substantial justice. Accordingly, BCBSA has failed to carry its burden to show that exercising jurisdiction over it based on the claim in Count VI does not to comport with fair play and substantial justice.

 Therefore, because the Molloys made factual allegations supported by competent evidence sufficient to set out a prima facie showing that BCBSA committed a tort, by approving misleading advertisements outside of the Virgin Islands that caused injury inside the Virgin Islands, we hold that the Molloys alleged sufficient contacts to permit the Superior Court to exercise specific jurisdiction over BCBSA as to Count VI. Since the Molloys alleged sufficient contacts to establish a prima facie case for jurisdiction on both statutory and constitutional grounds, we reverse the Superior Court's April 27, 2005 order dismissing BCBSA for personal jurisdiction, but only as it relates to Count VI.

## C. The Superior Court abused its discretion by dismissing the Molloys' claims for failure to prosecute without first addressing all six required *Halliday* factors.

 Following a two-year lull in activity after the dismissal of BCBSA, The Superior Court dismissed the remainder of the Molloys' claims for failure to prosecute. In their appellate brief, the Molloys argue that the Superior Court abused its discretion when it dismissed their claims because (1) the Superior Court failed to address each of the six required factors before a case can be dismissed for failure to prosecute and (2) the Superior Court incorrectly weighed the four factors that it did address. The Superior Court dismissed the Molloys' claims for failure to prosecute, determining that the two-year lull in activity was not adequately explained, and although the court did not feel constrained to balance the factors articulated in *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984), it considered four of the factors to supplement its record of the dismissal. The six required factors are

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the

185

effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis*, 747 F.2d at 868 (emphasis omitted). In *Halliday v. Footlocker Specialty, Inc.*, 53 V.I. 505 (V.I. 2010), we adopted those factors and held that the "the Superior Court may not dismiss an action for failure to prosecute unless these six factors strongly weigh in favor of dismissal as a sanction." *Id.* at 511. We noted that the "extreme" sanction of dismissal is reserved for instances in which "a trial court makes appropriate findings to all six factors." *Id.* Without them, the drastic sanction of dismissal "cannot be warranted." *Id.* Although a trial court is not required to find that all the factors weigh in favor of dismissal to warrant dismissal of the claim, the court must explicitly consider all six factors, balance them, and make express findings. *Id.*; *United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 162 (3d Cir. 2003). Here, the Molloys argue that the trial court did not consider the meritoriousness of the Molloys' claims and did not consider alternative sanctions.

 Responding to this argument, the appellees first argue that we should reconsider the requirement that the Superior Court must explicitly consider all six *Halliday* factors in light of Third Circuit cases affirming dismissals for failure to prosecute without first considering some or all of the factors we adopted in *Halliday*.[9] However, the Third Circuit has recognized that these opinions are based on particularly egregious behavior of the plaintiff, generally characterized by an affirmative refusal to participate in proceedings. Where such overt refusal to proceed is not

---

[9] *Spain v. Gallegos*, 26 F.3d 439, 454-55 (3d Cir. 1994) (affirming dismissal without factors due to an affirmative declaration refusing to prosecute and stating that the balancing of all six factors is required when "the plaintiff does not desire to abandon her case"); *Guyer v. Beard*, 907 F.2d 1424, 1429 (3d Cir. 1990) (affirming dismissal without factors for refusal to comply with a court order after repeated refusals to sign court-ordered power of attorney); *see also Shipman v. Delaware*, 381 Fed. Appx. 162, 164 (3d Cir. 2010) (unpublished) (affirming dismissal without factors for refusal to engage in discovery or explain failure to participate but limiting its holding to situations in which the "litigant's conduct makes adjudication of the case impossible"); *Tuka v. C.I.R.*, 324 Fed. Appx. 193, 195 (3d Cir. 2009) (unpublished) (affirming dismissal without factors for refusing to participate in trial after losing motion to set aside trial date); *Iseley v. Bitner*, 216 Fed. Appx. 252, 254-55 (3d Cir. 2007) (unpublished) (affirming dismissal without factors for refusing to file an amended complaint to move the case forward for over a year); *Wallace v. Graphic Mgmt. Assocs.*, 197 Fed. Appx. 138, 141 (3d Cir. 2006) (unpublished).

present, the Third Circuit continues to require trial courts to consider the six factors and make explicit findings. *See Williams v. Kort,* 223 Fed.Appx. 95, 102 (3d Cir. 2007) (unpublished). Like the Third Circuit, we are not persuaded to abandon our holding in *Halliday* that the Superior Court must consider all six factors each time it seeks to dismiss a case for failure to prosecute. First, as we held in *Halliday,* dismissal for failure to prosecute is an extreme sanction which the trial court should be careful to avoid except where it can justify the dismissal after explicit consideration and weighing of all six *Halliday* factors. Second, we note that the Third Circuit has, in its most recent published opinion on the issue, rejected the appellees' argument that a trial court may justify dismissal for failure to prosecute upon consideration of less than all six of the factors. *See $8,221,877.16 in U.S. Currency,* 330 F.3d at 162 (reversing the trial court because it "addressed only *four* of the six *Poulis* factors: the extent of Kesten's responsibility, the prejudice to the government, the willfulness of Kesten's conduct, and the effectiveness of alternative sanctions, finding that these factors weighed in favor of dismissal. In so doing, the Court ignored both the merits of Kesten's defenses and a lack of dilatory conduct, factors that strongly caution against dismissal."); *see also Williams,* 223 Fed. Appx. at 103 (unpublished) (rejecting a similar argument based on the published cases the appellees rely on — *Spain* and *Guyer*). Therefore, we reaffirm our holding in *Halliday* that before the Superior Court may dismiss a case for failure to prosecute, it must explicitly address and balance all six *Halliday* factors.

We turn next to whether, in this case, the Superior Court explicitly considered and balanced all six *Halliday* factors. It is clear that the Superior Court considered four of the *Halliday* factors in its order dismissing the Molloys' claims, but the parties disagree about whether the Superior Court addressed either the meritoriousness of the Molloys' claims or alternative sanctions to dismissal. Although the Superior Court did not address the meritoriousness of the Molloys' claims explicitly in the order dismissing the Molloys' claims, MASAI argues that the trial court did consider the meritoriousness of the claims, albeit only in the order scheduling the hearing on the motion to reconsider. In that order, the trial court wrote that "[t]his case is troubling to the Court for several reasons. First, the Complaint by the Plaintiff[']s parents of a premature newborn in August, 1999, is certainly a serious one insofar as the suit alleges injuries to the infant . . . ." (J.A. 75.) In making this argument,

MASAI misinterprets what a court must consider to determine the meritoriousness of the claim. "A claim, or defense, will be deemed meritorious where the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." *Poulis*, 747 F.2d at 869-70. The trial court did not consider whether it was likely, or even possible, that the plaintiffs could prevail at trial on their allegations. Instead, the court only mentions that the allegations are "serious" because of the injury to the infant. Moreover, even if the trial court had made such a determination, it did not balance this consideration against any of the other factors to permit us to decide if the court abused its discretion.

Additionally, the appellees argue that the trial court did consider alternative sanctions by reinstating D.M.'s claims while dismissing the Molloys' claims. However, as we made clear in *Watts v. Two Plus Two, Inc.*, 54 V.I. 286 (V.I. 2010), decided one month before the parties' briefs were filed but not discussed by any party, the *Halliday* factors must be considered for each plaintiff individually. *Id.* at 290 n.1, 291. Accordingly, the decision to permit a different plaintiff, D.M., to continue with his claims cannot be considered an alternative sanction to the dismissal of the Molloys' claims.

■ Therefore, first, we reaffirm our holding as set forth in *Halliday* that a trial court is required to explicitly state its reasoning on each of the six *Halliday* factors before imposing the extreme sanction of dismissal due to a failure to prosecute. Second, we reject the appellees' contention that the Superior Court explicitly considered alternative sanctions or the meritoriousness of the claims factor. Consequently, because the Superior Court failed to address either alternative sanctions to dismissal of the Molloys' claims or the meritoriousness of the Molloys' claims, the Superior Court abused its discretion. *See United States v. Thompson-Riviere*, 561 F.3d 345, 348 (4th Cir. 2009) (defining abuse of discretion as, among other things, a failure to consider judicially recognized factors designed to limit judicial discretion).

## D. Review of Superior Court findings on *Halliday* factors and directions on remand.

■ Given this Court's holding that the Superior Court abused its discretion by failing to address all six of the *Halliday* factors, it would ordinarily not be necessary for this Court to consider the Molloys'

argument that the Superior Court incorrectly analyzed the four *Halliday* factors it did review. " 'However, it is well established that an appellate court, when ordering a remand to a trial court for further proceedings based on its disposition of one issue may, in the interests of judicial economy, nevertheless consider other issues that, while no longer affecting the outcome of the instant appeal, are likely to recur on remand.' " *Chinnery v. People*, 55 V.I. 508, 524 (V.I. 2011) (quoting *Smith v. Turnbull*, 54 V.I. 369, 374 (V.I. 2010) (unpublished)). Therefore, because the trial court will be required to review each of the factors again on remand, we shall address the four factors the Superior Court already considered. We stress, however, that on remand the trial court will be required to review and make findings on the other two factors and engage in a balancing of all six factors. *See Halliday*, 53 V.I. at 511.

In its May 28, 2008 Order denying the Molloy's motion to vacate the dismissal for failure to prosecute, the Superior Court addressed the following four *Halliday* factors: the extent of the party's personal responsibility, the prejudice to the adversary, the history of dilatoriness, and whether the conduct of the party was willful or in bad faith. Of those four, the Superior Court determined that, although there was no prejudice to the defendants caused by the two-year lull in activity, the other three factors all supported dismissal of the complaint.

### 1. The prejudice to the opposing parties.

 The Superior Court determined that there was no prejudice to the defendants based on the two year delay, and thus that factor favored not dismissing the complaint. We agree. Prejudice to the opposing party is generally demonstrated by either increased expense to the opposing party arising from the extra costs associated with filings responding to dilatory behavior or increased difficulty in the opposing parties' ability to present or defend their claim(s) due to the improper behavior. *See Poulis*, 747 F.2d at 868; *Remy v. Ford Motor Co.*, 48 V.I. 141, 152-53 (V.I. Super. Ct. 2006). No party, including the defendants, filed anything during the two year lull of activity, and the lull was not ended by the defendant filing a motion, but on the court's own initiative. Therefore, it is not clear what, if any, additional expenses the defendants incurred during the two year delay. Moreover, the defendants failed to explain how the alleged dilatory behavior of the Molloys in any way hampered their ability to defend against the Molloys' claims. Accordingly, the Superior Court correctly determined that there was no prejudice to the opposing party in this case.

### 2. The Molloys' personal responsibility.

██ Turning next to the personal responsibility factor, the sole ground cited by the Superior Court for holding the Molloys personally responsible for the delays was their failure to personally attend a hearing that did not occur until two months *after* the Superior Court had already dismissed the complaint for failure to prosecute. To the extent that the Molloys' failure to appear at the hearing two months after the dismissal could justify a finding of personal responsibility for the delays, the Superior Court itself acknowledged that "there is no return of service in the file showing that the [Molloys] received the Court's Order" to attend the July 9, 2007 hearing.[10] (J.A. 83-84.) Given these facts, the Superior Court made a finding that is not rationally based on the evidence that was before it and therefore abused its discretion by determining that the Molloys were personally responsible for the delays.

### 3. The history of dilatory behavior.

 Turning to the next prong, the history of dilatory behavior, the Superior Court held that the dilatoriness factor weighed against the Molloys because they had "allow[ed] almost two years to lapse without taking any action to prosecute th[e] case" and "failed to comply with this Court's Order to move the case forward." (J.A. 84.) However, the Superior Court could not have attributed the two year lull in activity to the Molloys. At the July 9, 2007 hearing, the Molloys' counsel expressly stated that no action was taken because all pending motions had been ruled on and that the only remaining step the case required was the setting of a trial date. (J.A. 116.) The certified docket entries reflect that discovery had concluded, that the prior judge issued a January 11, 2005 Order of Readiness for Trial, and had decided the last pending motion on April 28, 2005. Given these circumstances, it appears that the two year delay is attributable entirely to the Superior Court for failing to set a trial

---

[10] The Superior Court also appears to have relied on the representation of the Molloys' counsel that the Molloys were informed about the hearing. (J.A. 84 (quoting from an exchange at the hearing between the Molloys' attorney and the trial judge).) However, in that exchange, the Molloys' attorney candidly stated that she did not know whether the Molloys received notification, just that she thought they had. (J.A. 84.) Thus, we find that, contrary to the Superior Court's conclusion, it was not "clear" that the Molloys "had notice of the hearing." (J.A. 84.)

190

date. Therefore, only the failure to respond to the Superior Court's March 19, 2007 order prompting the plaintiff to move the case forward can be imputed to the Molloys as a basis for a finding of a history of dilatoriness.[11]

 But, the short delay caused by the Molloys' failure to respond to the March 19, 2007 order by itself does not justify a finding that there was a history of dilatoriness. *Cf. Poulis*, 747 F.2d at 868 (finding a history of dilatory behavior because "[u]nlike the *Donnelly* [*v. Johns-Manville Sales Corp.*, 677 F.2d 339 (3d Cir. 1982)] case, for example, where there was *only one failure to comply in a timely manner*, i.e. in obtaining local counsel, in this case there has been a pattern of dilatoriness.") (emphasis added). Although the Molloys' attorney acknowledges that she overlooked the court's March 19, 2007 order, she moved swiftly once the case was dismissed, taking less than two weeks to file her motion to vacate once the Superior Court issued its May 8, 2007 order dismissing the case. In total, after five years of vigorous litigation and two years of waiting on the trial court, the delay attributable to the Molloys' failure to respond to the March 19, 2007 order is less than two months. The Superior Court was required to evaluate the history of dilatoriness factor "in light of [the Molloys'] behavior over the life of the case." *Adams v. Trustees of N.J. Brewery Employees' Pension Trust*, 29 F.3d 863, 875 (3d Cir. 1994). Accordingly, in light of the brief delay caused and the history of the case, the behavior in this case, while somewhat dilatory, falls short of being a history of dilatory behavior that would support dismissal as a sanction.

---

[11] We note, of course, that had the trial court issued a trial date after the final pending motion was decided, the prompting order the Molloys failed to respond to would never have been necessary. Nevertheless, the Molloys' failure to respond was dilatory because it is the duty of all litigants to heed and respond to a trial court's orders. The failure to follow a Superior Court order can be the grounds for sanctions against the party or its attorney. *See* 4 V.I.C. §§ 243, 244, 281, 282; SUPER CT. R. 111; FED. R. CIV. P. 11, 41(b). We stress that our opinion does not hold that the Superior Court is forestalled from sanctioning any party that fails to heed one of its orders. We merely hold that, in this case, the extreme sanction of dismissal of the case with prejudice is not available to the Superior Court as a sanction until it completes a full balancing as required by *Halliday* and determines that the factors "strongly weigh in favor of" dismissal. *See Halliday*, 53 V.I. at 511.

### 4. Whether the party's conduct was willful or in bad faith.

■ At the hearing on the motion to vacate the dismissal, the Molloys' attorney asserted that the failure to respond was based on personnel changes at the attorney's office and was, therefore, not willful. In its May 28, 2008 order, the Superior Court rejected that explanation as "strain[ing] credibility" because "Plaintiffs' counsels are experienced attorneys with a well established office." (J.A. 85.) Having rejected Molloys' counsel's explanation, the court determined that, because no other explanation had been forthcoming from the Molloys, the failure to respond must therefore have been willful. (J.A. 85.) However, the Superior Court's analysis misapplied the correct analysis to determine if the behavior was willful — the trial court must point to specific evidence to justify its determination of willfulness or bad faith. *See Poulis*, 747 F.2d at 868-69 ("Although the district court concluded that 'plaintiffs' counsel's conduct [was] of such a dilatory and contumacious nature to require dismissal,' there is nothing in the record to support the 'contumacious' finding. . . . There has been no suggestion or indication that counsel's illness during July 1982 and his wife's late pregnancy and false labor at the end of that month did not occur as he represented.") (citation omitted). Here, the trial court took the lack of evidence as to willfulness to indicate that the conduct has been willful. (J.A. 85 ("The conduct of the Plaintiffs and their counsel *was* willful. There is nothing in the record to support any other interpretation.").) The trial court cannot presume that the actions of the Molloys' counsel were willful in the face of no evidence to support that conclusion. Accordingly, because there is no evidence of willfulness on the record, we must presume the Molloys' failure to respond to the prompting order was not willful and that this factor also does not favor dismissal.

In conclusion, then, we will remand this case to the Superior Court for a full *Halliday* analysis. In that analysis, the Superior Court should make findings concerning and consider the final two *Halliday* factors: the possibility of alternate sanctions and the meritoriousness of the Molloys' claims. Then, the Superior Court must balance all six factors against one another and determine whether that balance strongly favors dismissal for failure to prosecute.

### IV. CONCLUSION

The Superior Court erred in granting BCBSA's motion to dismiss for lack of personal jurisdiction, but only as to Count VI for false

advertisement. We conclude that the Molloys made the necessary prima facie showing that the Superior Court may exercise specific jurisdiction over BCBSA for Count VI. Furthermore, the Superior Court abused its discretion in dismissing the Molloys' claims for failure to prosecute without first making explicit findings as to all of the six *Halliday* factors and determining whether, all weighed together, they warrant dismissal. Therefore, we reverse the Superior Court's April 27, 2005 order dismissing BCBSA for personal jurisdiction as it relates to Count VI. Additionally, we reverse the Superior Court's May 8 and 27, 2008 orders dismissing the Molloys' claims for failure to prosecute and denying their motion to vacate, and we remand the case to the Superior Court.