IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

PHILLIP TUTEIN, JR., as the personal )
representative of the survivors of )
Penelope Caylin Audejah Tutein, Deceased, )
and Austin Tutein, a minor, )
                                         )
                          Plaintiff, )
                 v. )

FIAT CHRYSLER AUTOMOBILES, US LLC )
(FCA US LLC), formerly known as Chrysler )
Group LLC, and MARCOS ARROYO-TORRES, )
                          Defendants. )

**CASE NO.: SX-20-CV-38**

ACTION for WRONGFUL DEATH,
SURVIVAL DAMAGES and
PERSONAL INJURIES

**2020 VI Super 71**

## MEMORANDUM OPINION and ORDER

¶ 1    Before the Court is Defendant Fiat Chrysler Automobiles, US LLC's (FCA) fully briefed Motion to Dismiss for Lack of Personal Jurisdiction, filed March 12, 2020 pursuant to V.I. R. Civ. P. 12(b)(2). Both parties' submissions were supported by declarations and other documentary materials. The Motion came on for oral argument on June 25, 2020. For the reasons that follow, FCA's Motion will be denied.

## BACKGROUND

¶ 2    Plaintiff Phillip Tutein, Jr. is the father of Austin Tutein and Penelope Caylin Andejah Tutein. Austin is a minor resident and citizen of St. Croix. Penelope was a five-year old resident and citizen of St. Croix who died June 24, 2019, following the motor vehicle accident of the previous day that gives rise to this action. Plaintiff alleges that, on June 23, 2019, Migdalia Roach, mother of Penelope and Austin, was driving her 2013 Dodge Durango, heading east on Peter's Rest Road in St. Croix, with the children in the rear seat. At the same place and time on the same road, Defendant Marcos Arroyo-Torres was intoxicated, driving his vehicle westbound. Arroyo-Torres' vehicle crossed the center line into the eastbound lane and struck Roach's vehicle, which spun out of control and rolled over, ultimately coming to a rest on its left side. As Roach's vehicle rolled, both Penelope and Austin were ejected, at least partially, from the rear left passenger window of the vehicle, which had been closed prior to impact, but shattered and opened when the vehicle rolled. As a result of their ejection following the collision, Austin suffered injuries and Penelope was pinned under the vehicle and suffered blunt head trauma that led to her death.

¶ 3    Plaintiff's Complaint, filed January 24, 2020, presents actions for wrongful death as the personal representative of the survivors of Penelope pursuant to 5 V.I.C. § 76, and for survivor damages on behalf of Penelope's estate pursuant to 5 V.I.C. § 77. Tutein also presents a claim as next friend on behalf of Austin for personal injury and damages.

¶ 4    Plaintiff brings a cause of action against Defendant Arroyo-Torres for negligence by failing to operate his vehicle with due care, failing to keep his vehicle in the proper lane of travel and by operating his vehicle under the influence of alcohol, proximately causing the collision and subsequent injuries and death of Austin and Penelope.

¶ 5    The Complaint alleges two causes of action against FCA, a Delaware limited liability company, with its principal place of business in Michigan. FCA designed, manufactured, sold and distributed Roach's Dodge Durango involved in the accident. Plaintiff claims that FCA is strictly liable for placing into the stream of commerce a vehicle that was defective and unreasonably dangerous when used in its intended manner, and that such defects were a substantial causative factor in the damages of which Plaintiff complains. The Complaint also alleges that FCA was negligent, breaching its duty of care to users, by designing, manufacturing and distributing a vehicle unreasonably dangerous for its intended use; and that FCA was further negligent by failing to recall and repair the 2013 Dodge Durango when it determined that airbag systems in similar Dodge vehicles did not perform as designed, which recall and repair would have allowed the airbags to properly deploy in the accident, preventing the ejection of Penelope and Austin. Plaintiff claims that FCA's negligence proximately caused Austin and Penelope to be ejected from the vehicle during the accident, resulting in injuries to Austin and Penelope, and to Penelope's death.

## DISCUSSION

¶ 6    The June 25, 2020 hearing on the Motion was limited to the arguments of counsel, without taking evidence. There has been no jurisdictional discovery requested or conducted by either side. In this context, Plaintiff's burden is to establish the existence of a prima facie case for personal jurisdiction over FCA. *See Molloy v. Independence Blue Cross*, 56 V.I. 155, 172 (V.I. 2012) ("if the trial court does not hold an evidentiary hearing to determine the motion to dismiss based on personal jurisdiction, the plaintiff is only required to establish a prima facie case for personal jurisdiction") (citations omitted).

¶ 7    To establish that the Court has personal jurisdiction over FCA in this litigation, Plaintiff must satisfy a "two-part test:" to present a prima facie case for jurisdiction under the Virgin Islands long arm statute (5 V.I.C. § 4903); and to show that FCA's right to due process under the U. S. Constitution "would not be violated by being haled into court in the Virgin Islands." *Molloy*, 56 V.I. at 173-74 (citations omitted).

¶ 8    FCA acknowledges the satisfaction of the first part of the test, conceding that Plaintiff's claims "may arguably meet the requirements of the Virgin Islands' long arm statute,"[1] citing specifically 5 V.I.C. § 4903(a)(4), which states:

> (a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's...
>
> > (4) causing tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory.

¶ 9    However, FCA contends that Plaintiff cannot meet the second part of the test, arguing that the exercise of personal jurisdiction requiring it to respond to Plaintiff's claims in the courts of the Virgin Islands would constitute a violation of its constitutional due process rights. A court may constitutionally find general jurisdiction over a defendant, that is, the right to hear all cases against it regardless of where or how they arise, if it finds that defendant has "continuous and systematic" affiliations which render it "essentially at home" in the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

¶ 10    Plaintiff concedes that FCA lacks the continuous and systematic contact with the Virgin Islands to subject it to general jurisdiction in these courts to hear any and all claims against FCA. Yet, a court may exercise specific personal jurisdiction, on a claim-by-claim basis, over a defendant if it finds that the defendant has the requisite minimum contacts with the forum and that the claim arises out of those contacts. *See Molloy*, 56 V.I. at 181 (citations omitted). This exercise of "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the

---

[1] FCA Memorandum in Support of Motion to Dismiss, at 4.

very controversy that establishes jurisdiction." *Goodyear Dunlop Tires*, 564 U.S. at 919 (citation and internal quotation omitted).

¶ 11    Plaintiff argues that specific jurisdiction is established against FCA in this case because Plaintiff's claims arise out of FCA's activities that were purposefully directed toward the Virgin Islands. Specific personal jurisdiction may be exercised over a defendant in Virgin Islands courts upon the application of a three-part test: "First, the defendant must have purposefully directed its activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, if the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice. The purpose of the test is to ensure that the defendant has the requisite minimum contacts with a forum to receive fair warning that the defendant may be haled into court in that forum to answer for its actions in relation to those contacts." *Molloy*, 56 V.I. 155, 183-84 (citations and internal quotations omitted).

¶ 12    Plaintiff presents the Declaration of Roach[2] to demonstrate FCA's contacts with the Virgin Islands and, specifically, her interaction with the "Chrysler Dodge Jeep" dealership on St. Croix over the course of years since around 2004 when she purchased an "SUV styled Jeep." She became "a loyal customer of the dealership," in part because of the good service she received from its service department. She purchased a used Jeep Compass from the dealership around 2009, partly in reliance that she would receive good service based upon her experience with the service department. In late 2016, Roach was a passenger in a Dodge Durango in St. Croix, which she liked so much that she rented Dodge Durango vehicles when she visited the states in 2017 and again in 2018. When Roach decided to buy another vehicle, in December 2018 she applied and was approved for a loan on St. Croix to finance the purchase. Roach learned of a used Dodge Durango at the St. Croix dealership, but it had been sold by the time she visited the dealership, now under new management. The sales representative showed and discussed with Roach a new Dodge Durango on the lot that she was unable to afford. Roach determined that she intended to purchase a used Dodge Durango if she could find one, and confirmed with the sales representative that the dealership would service the vehicle and "have any manufacturer's recalls fixed."[3] Shortly thereafter, through an internet search, Roach located and purchased the used 2013 Dodge Durango

---

[2] Plaintiff's Opposition, Declaration of Migdalia L. Roach, Exhibit 1.
[3] *Id.* ¶ 15.

later involved in the accident, from Autocentro Chrysler Dodge Jeep dealership in Caguas, Puerto Rico, which she then had shipped to St. Croix. Roach avers that she would not have purchased the vehicle "but for the fact" that she knew that she could get it serviced, including getting recalls fixed, at the Dodge dealership on St. Croix, a factor Roach claims was "a critical part of my decision to buy the 2013 Dodge Durango in Puerto Rico."[4]

¶ 13    FCA argues as to the first two prongs of the specific personal jurisdiction test adopted in *Molloy*, that it did not purposefully direct its activities at the Virgin Islands; and that Plaintiff's claims do not arise out of any FCA contacts with the Virgin Islands. As such, FCA contends that the Court may not exercise specific personal jurisdiction over it. FCA cites Plaintiff's Complaint that raises claims against FCA regarding the subject vehicle's design, manufacture, sale and distribution, none of which occurred in the Virgin Islands. The design and manufacture of the vehicle occurred in Michigan, and it was distributed and sold to an independent dealer (not Autocentro) in San Juan, Puerto Rico, following which FCA engaged in no further activity with regard to the vehicle, which was later purchased by Roach from an independent third party in Puerto Rico, and shipped by Roach to the Virgin Islands.

¶ 14    FCA argues that virtually all the purported contacts with this forum cited by Plaintiff are "Plaintiff-centric," relating to actions of Roach or third parties, rather than to activities of FCA in the Virgin Islands. FCA also stresses the fact that the dealerships in Puerto Rico and St. Croix with which Roach dealt are each independent third parties, not corporate affiliates of FCA or "any other FCA Group company." The St. Croix dealership is authorized to sell and service FCA vehicles through a September 1, 2015 Dealer Agreement with FCA International Operations LLC (FCA-IO), a separate entity from FCA. By the Dealer Agreement, the St. Croix dealer specifically affirms that it is "an independent business for its own account" and is not an agent of FCA-IO or any FCA Group company.[5]

¶ 15    "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (internal quotation and citation omitted). Further, the "unilateral activity of another party

---

[4] *Id.* ¶ 23.

[5] FCA Reply to Plaintiff's Opposition, Exhibit A, Declaration of Janet Stark, ¶¶ 4, 5.

or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum state to justify an assertion of jurisdiction." *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 417 (1984). FCA urges that jurisdiction in this Court cannot be established based upon contacts between Migdalia Roach and the local Dodge dealership, an independent nonparty entity, without any activity of FCA purposefully directed to this jurisdiction.

¶ 16    Yet, through the Dealer Agreement between FCA's wholly owned subsidiary, FCA-IO, and the St. Croix dealership, FCA's vehicles are financed, leased, sold and serviced with FCA parts and accessories, pursuant to training provided by FCA-IO.[6] Mandatory "Dealership Standards" and other requirements, manuals, guidelines and materials imposed by FCA-IO bind the dealer's facility and operations with the purpose to enhance the high-quality image, reputation and acceptability of FCA products. The dealer is required to display approved signage and may include FCA trademarks and related marks and logos in displays and advertising to identify the dealer as authorized to sell and service FCA vehicles. In the event the dealer becomes aware of a claim or potential claim of a design or manufacturing defect in an FCA vehicle or product, it is required to immediately report the same to FCA-IO as well as to FCA directly.

¶17    FCA filed its Motion pursuant to Rule 12(b)(2) in lieu of answering Plaintiff's Complaint. Although both parties submitted declarations and other documentary materials in support of their filings, no jurisdictional discovery was conducted and no evidentiary hearing was convened, such that Plaintiff's burden is to make a prima facie showing of personal jurisdiction. "When the Superior Court makes that prima facie determination, it must accept as true all of plaintiff's factual allegations that are supported by affidavits or other competent evidence which would be admissible at trial and must resolve all factual disputes in the plaintiff's favor." *Molloy*, 56 V.I. at 173.

¶ 18    Here, Plaintiff has alleged sufficient facts to establish a prima facie case that FCA has sufficient minimum contacts with the Virgin Islands to satisfy the first prong of the *Molloy* specific personal jurisdiction test. While the St. Croix dealership is a third party, not an agent of or related to FCA or FCA-IO, through the present Dealer Agreement and agreement with at least one former St. Croix dealership, FCA has purposefully directed its activities toward the Virgin Islands,

---

[6] Redacted versions of the September 1, 2015 Dealer Agreement were submitted under seal by both parties.

directing the placing of its signage and trademarks, making available to Virgin Islands consumers its vehicles for sale for its economic benefit, servicing its vehicles and generating, as in the case of Migdalia Roach, a loyal customer base in St. Croix over the course of many years.

¶ 19    In addition to establishing FCA's purposefully directed minimum contacts with the Virgin Islands, Plaintiff must also satisfy *Molloy's* second prong for specific personal jurisdiction by presenting sufficient facts to establish a prima facie case that his claims arise out of or are related to at least one of those contacts. "In order for a state court to exercise specific jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the *forum*." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (citations and internal quotations omitted) (emphasis in original). FCA argues that Plaintiff fails in this regard as his claims do not arise out of or relate to any activity of FCA in the Virgin Islands. The allegedly defective and/or negligent design and manufacture of the 2013 Dodge Durango occurred, if at all, in Michigan, and FCA sold and distributed the vehicle to an independent dealer in Puerto Rico. Thereafter, FCA suggests, all contacts between the vehicle and the Virgin Islands and Plaintiff's claims were the result of the "unilateral activity" of Roach, relating to her subjective intentions, and her communications with the independent nonparty St. Croix dealer. *See Walden v. Fiore*, 571 U.S. at 284 (citation omitted).

¶ 20    FCA relies upon *Walden* and *Bristol-Myers Squibb* for the proposition that forum-related activity of a plaintiff or third-party giving rise to a plaintiff's claims is insufficient to establish personal jurisdiction. In *Bristol-Myers Squibb*, the Supreme Court found there to be no personal jurisdiction over 593 out-of-state plaintiffs who brought suit in California state court, together with 86 California residents, asserting products liability and related claims based on injuries allegedly caused by their use of Plavix, a product manufactured and distributed by the drug manufacturer defendant, incorporated in Delaware and headquartered in New York. Personal jurisdiction was not challenged against the California plaintiffs. The nonresident plaintiffs had not obtained Plavix in California, from California physicians or any other California source, nor did they allege that they had been injured by using Plavix in California or that they were treated for their injuries in California. Although the defendant distributed Plavix in California and engaged in research, unrelated to Plavix, in California, those contacts that were unrelated to the nonresident plaintiffs' claims were not sufficient to establish specific personal jurisdiction. "What is needed – and what

is missing here – is a connection between the forum and the specific claims at issue." *Bristol Myers Squibb*, 137 S. Ct. at 1781.

¶ 21　Similarly, *Walden* emphasizes that for a state court to exercise personal jurisdiction over a nonresident defendant, "the defendant's suit-related conduct must create a substantial connection with the forum state." *Walden v. Fiore*, 571 U.S. at 284. The Georgia defendant in *Walden* was not susceptible to being haled into federal court in Nevada by a Nevada resident in connection with the seizure of funds in Georgia, while the plaintiff was in transit from Puerto Rico to Nevada, with a connecting stop in Atlanta. The defendant had never traveled to Nevada, communicated with or sent anything to anyone in Nevada, or conducted any activities in Nevada with regard to the incident that gave rise to the litigation. Viewing "through the proper lens – whether the *defendant's* actions connect him to the *forum* – petitioner formed no jurisdictionally relevant contacts with Nevada." *Id.* at 289 (emphasis in original).

¶ 22　Accordingly, this Court may hear Plaintiff's claims against FCA only if those specific claims have a connection with FCA's Virgin Islands-related conduct. That is, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol Myers Squibb*, 137 S. Ct. at 1780. FCA points to Plaintiff's Complaint and its allegations of design and manufacturing defects and negligence that could only have occurred in Michigan. FCA placed the subject 2013 Dodge Durango into the stream of commerce by its sale and distribution to an independent dealer in Puerto Rico in 2013. In 2018, through a different independent dealer in Puerto Rico, Migdalia Roach purchased the subject vehicle and personally had it transported to St. Croix, without participation of FCA, FCA-IO, or either the Puerto Rico or St. Croix dealerships.

¶ 23　Subsequently, the accident which gave rise to the injuries, death and this suit occurred in the Virgin Islands. Plaintiff alleges that Roach would not have purchased the vehicle but for the assurances she sought and received from the St. Croix dealership that she could have the used 2013 Dodge Durango serviced in St. Croix. Because of her history and relationship with FCA vehicles in St. Croix since 2004 and the servicing she had received on those vehicles at the St. Croix Dodge dealership, Roach required those assurances without which she would not have purchased the vehicle, and the subsequent accident and this lawsuit would not have occurred. Roach's reliance is buttressed by the FCA-IO Dealer Agreement with the St. Croix dealer that requires the dealer to

maintain a service network of such quality and capacity to ensure expert servicing of FCA products. Servicing, maintenance and repair work are to be performed regardless of where or by whom the FCA product was acquired, and whether the FCA product is new or used. All customers and their vehicles are to be treated with equal care. *See* Dealer Agreement, ¶¶ 5.1, 6.1.

¶ 24 By her Declaration, Roach further affirms that prior to purchasing the 2013 Dodge Durango, she confirmed with the St. Croix dealership that it would not only service the vehicle, but also would "have any manufacturer's recalls fixed." Servicing the vehicle in St. Croix, "including getting needed recalls fixed," was a "critical" prerequisite to Roach's decision to purchase the vehicle.[7] This reliance by Roach regarding recalls directly relates to Plaintiff's claim that FCA "knew or had reason to know that said product was defective and unsafe, even when used in the manner as intended, at all times mentioned herein..." and that FCA breached its duty of care by its "negligent failure to recall the 2013 Dodge Durango when it was determined that air bag systems in similar Dodge vehicles were not performing as designed..."[8]

¶ 25 Through its subsidiary and the St. Croix dealership, FCA has provided for the servicing in St. Croix of all its vehicles, new and used, wherever acquired, including the repair of vehicles subject to recall notices. Roach has declared that but for the assurance of such service and repairs on recall in St. Croix, she would not have purchased the subject vehicle. Plaintiff claims entitlement to relief for FCA's "suit-related conduct" – putting a defective vehicle into the stream

---

[7] Roach Declaration, ¶¶ 15, 23.

[8] Complaint, ¶¶ 27, 37(c). As it must, the Court accepts as true "all of plaintiff's factual allegations that are supported by affidavits or other competent evidence that which would be admissible at trial..." *Molloy*, 56 V.I. at 173. However, "at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." *Unlimited Holdings, Inc. v. Bertram Yacht, Inc.*, 49 V.I. 1002, 1007 (D.V.I. 2008) (quoting *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)) (alteration in original omitted). Here, Plaintiff has presented evidence of Virgin Islands safety recalls of certain FCA vehicles, some of which relate to issues with airbag systems, for model years through 2007. *See* Opposition, Holt Declaration, Exhibit D. No evidence is presented to support the Complaint's allegations that FCA had reason to know of a defect in the subject vehicle's front and Side Airbag Inflatable Curtains (SABIC) because FCA had previously "determined that the air bag systems in similar Dodge vehicles were nor performing as designed..." The evidence presented does confirm that none of the airbags deployed during the accident "as [Plaintiff claims] they should have." Plaintiff claims that had the defective airbag systems been recalled, "such a recall would have resulted in these systems being repaired," preventing the ejection of Penelope and Austin during the accident. (Complaint, ¶ 37(c)).

of commerce and failing to take steps through the St. Croix dealership to recall the vehicle to correct those defects when FCA knew or should have known that repairs were required.

¶ 26    FCA points to the recent case of *Coates v. Ford Motor Co.*, wherein the District Court of the Virgin Islands on the defendant's Rule 12(b)(2) motion to dismiss found that it lacked personal jurisdiction over Ford.[9]  Coates purchased her used 2002 Ford Explorer in a different jurisdiction from a third-party seller with no relationship to Ford. She was involved in an accident in the Virgin Islands when an airbag exploded resulting in injuries to her. Coates presented evidence that Ford trains and certifies mechanics to repair its products in the Virgin Islands, and that she received a recall notice for which she brought the vehicle to a Ford dealership in the Virgin Islands for repairs unrelated to the airbag explosion. Coates pleaded that for decades, to entice customers, Ford made dozens upon dozens of advertisements and commercials throughout the country, including in the Virgin Islands, touting the safety of its vehicles and Ford's concern for safety. Coates claimed that she was enticed by Ford's marketing materials and would not have purchased the Ford Explorer in issue but for her exposure to Ford's marketing in the Virgin Islands. Yet, the District Court's analysis, based upon a "necessarily fact-sensitive inquiry,"[10] found that Coates did not prove that her claims arose from Ford's efforts to serve the Virgin Islands market. Rather, Ford's national, generic advertising campaign was neither directed at the Virgin Islands nor specifically sought to cultivate a relationship with Coates and to solicit her business. As such, the District Court found that Coates failed to establish that her claims arose out of Ford's contacts with the Virgin Islands, concluding that it lacked personal jurisdiction over Ford.

¶ 27    The *Coates* court notes a contrary result, arising from Ford's enticing the plaintiff to purchase a Ford vehicle through its advertising, in the case *Antonini v. Ford Motor Co.*[11] In that case, the plaintiff was injured in an accident involving a used, allegedly uncrashworthy, 2005 Ford Explorer that had been assembled in Kentucky, sold and distributed to an independent dealership in New York which sold it to a New York purchaser in 2005. That owner sold the vehicle to an independent dealer, from which the plaintiff purchased it in New York in 2012 and brought it to Pennsylvania. In response to Ford's motion to dismiss for lack of personal jurisdiction, the plaintiff

---

[9] 2020 U.S. Dist. LEXIS 84666 (D.V.I. May 14, 2020).

[10] *Id.* at *22 (citing *O'Connor v. Shady Lane Hotel Co.*, 496 F.3d 312, 323 (3d Cir. 2007)).

[11] 2017 U.S. Dist. LEXIS 135247 (M.D. Pa. 2017).

alleged that had she not seen and been persuaded by Ford's advertising in Pennsylvania, she would not have purchased the vehicle. The court noted that Ford "directly and heavily" advertised in Pennsylvania by a variety of media over a number of years "to entice Pennsylvanians to buy and drive Ford brand vehicles, new or used." The court found that Ford's "forum related contacts achieved exactly what Defendant was seeking to achieve: it influenced a Pennsylvania driver to choose to purchase and drive a Ford brand vehicle. Further, the claim arose because Plaintiff was allegedly injured while driving her Ford Explorer in the same state in which Defendant had influenced her decision to buy the vehicle. Accordingly, there is a direct and close relationship between Defendant seeking to entice Plaintiff and other Pennsylvanians to purchase and drive Ford brand vehicles, in part by touting the cars as safe, and Plaintiff's claim that a defect in her Ford Explorer caused her injury while she was driving in the state where she was originally influenced by Defendant's advertisements to buy the vehicle." *Id.* at *8-9.

¶ 28    The fact-sensitive inquiry in this case reveals a more direct relationship between Plaintiff's claims and FCA's forum-related contacts than those found in either *Coates* or *Antonini*. Before she purchased the 2013 Dodge Durango, Roach sought and received specific assurances that her vehicle could be serviced in St. Croix and that any required safety recall issues would be repaired in St. Croix. Roach would not have purchased the vehicle but for receiving those assurances from the St. Croix dealer authorized by FCA, through FCA-IO, to market, sell, service and repair FCA's vehicles on St. Croix. In addition, Plaintiff further alleges that FCA negligently failed to recall the subject vehicle for airbag system repairs in St. Croix when it knew, or should have known, of the need to correct an airbag system defect that caused or contributed to the ejection of Penelope and Austin from the rear seat during the accident. Because the suit "arise[s] out of or relate[s] to the defendant's contacts with the forum," FCA is properly subject to jurisdiction in the Virgin Islands under *Molloy's* second prong. *Bristol Myers Squibb*, 137 S. Ct. at 1780.

¶ 29    As Plaintiff has established the existence of personal jurisdiction over FCA on the first two *Molloy* prongs, the Court must determine whether the exercise of jurisdiction comports with fair play and substantial justice, by analyzing "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies."

*Molloy*, 56 V.I. 155, 184 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). As to this final prong, "the burden of proof shifts to the defendant to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

¶ 30    In its briefing, FCA has not directly addressed the *Burger King* factors adopted in *Molloy*, but rather argues generally that subjecting it to jurisdiction in this Court would violate notions of fair play and substantial justice because its contacts with the Virgin Islands are so "random, fortuitous, or attenuated" that it could not "reasonably anticipate being haled into court" in the Virgin Islands.[12] FCA reiterates its position that Plaintiff's personal jurisdiction argument is based upon the unilateral activities of Roach: her communications with the representative of the independent nonparty dealership and her resulting subjective intentions; and her action to transport the vehicle from Puerto Rico to St. Croix. Because Plaintiff's jurisdictional claims are founded on activities and contacts of Roach with the Virgin Islands, and not those of FCA, FCA claims that it had no fair notice that it might be required to defend a lawsuit relating to Roach's 2013 Dodge Durango in St. Croix.

¶ 31    As to the factors to be analyzed in this third prong review, FCA has presented no facts to support a claim of burden or prejudice. Plaintiff presents FCA's 2019 Annual Report touting the fact that it is a global automotive group able to operate efficiently on a global scale. To date, FCA's defense in this matter has not been compromised, but rather has been ably presented through Virgin Islands counsel and two attorneys admitted *pro hac vice* from a national litigation firm. The Court will not speculate on potential prejudice to FCA where none has been articulated and none is apparent. Without counterargument from FCA, the interest of the Virgin Islands is apparent to permit Virgin Islands claimants to seek redress for personal injury and wrongful death claims arising from an accident that occurred in the Virgin Islands. "[T]he Virgin Islands has a significant interest in redressing harms committed against its citizens by out-of-state companies." *Gov't of United States Virgin Islands v. Takata Corp.*, 67 V.I. 316, 363 (V.I. Super. 2017). Clearly, Plaintiff's interests are best served, and he and his claimant family members can most conveniently and effectively seek relief in Virgin Islands courts. Plaintiff and other claimants reside here, as does Defendant Arroyo-Torres. Plaintiff notes that all key fact witnesses are Virgin Islanders –

---

[12] FCA Reply, at 18 (citing *Burger King*, 471 U.S. at 486).

those in the vehicles involved in the accident, the investigating police officers, the treating doctors, and the medical examiner who conducted the autopsy on the deceased minor. Other relevant evidence, including the 2013 Dodge Durango, is located in St. Croix. Plaintiff's action against Defendant Arroyo-Torres will necessarily be prosecuted in the Virgin Islands, and the interests of Plaintiff are clearly best served by litigating all his claims at one time in the same forum, especially where issues of comparative negligence and fault may be involved. Based upon the foregoing considerations, the interests of the interstate judicial system and of the several states are best served and will obtain the most efficient resolution of this controversy and fundamental substantive social policies will be furthered if the matter is heard in the Virgin Islands. There does not appear to be any competing state interest that would be undermined by the adjudication of this matter in this Court. Without any substantive argument to the contrary from FCA, FCA has not carried its burden on *Molloy's* third prong to show that fair play and substantial justice are not served by litigation in the Virgin Islands.

¶ 32    Seventy-five years ago, the Supreme Court explained the rationale of personal jurisdiction over a foreign corporation: "to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." *International Shoe Co. v. Washington*, 326 U.S. at 319. Here, FCA has exercised the privilege of making its new and used vehicles available for sale and servicing in the Virgin Islands since at least 2004. The exercise of that privilege gives rise to obligations, including the obligation to respond to a lawsuit that arises out of or is connected with its Virgin Islands activities. For the reasons stated, the Court "cannot say that the maintenance of the present suit in the [Virgin Islands] involves an unreasonable or undue procedure," but rather, the exercise of jurisdiction comports with fair play and substantial justice. *Id.* at 320.

¶ 33    As is set forth above, the Court finds that it has personal jurisdiction over FCA in this litigation under the Virgin Islands long arm statute (5 V.I.C. § 4903(a)(4)), and further finds that FCA's right to due process under the U. S. Constitution is not violated by being required to respond to this suit in the courts of the Virgin Islands. Accordingly, it is hereby

ORDERED that Defendant FCA's Motion to Dismiss is DENIED. Defendant FCA shall file its Answer to Plaintiff's Complaint with 21 days from entry of this Order.

DATED: July __7__, 2020.

_____
DOUGLAS A. BRADY, JUDGE

ATTEST:

TAMARA CHARLES
Clerk of the Court

By: _____
Court Clerk Supervisor          7/7/2020

**Distribution List:**
Joel H. Holt, Esq.
Paul R. Neil, Esq.
D. Alan Thomas, Esq.
Jennifer Reid Egbe, Esq.