IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**
August 10, 2023 02:56 PM
SX-2020-CV-00722
**TAMARA CHARLES**
**CLERK OF THE COURT**

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| HAYDEN BARRY,<br><br>                  Plaintiff,<br><br>        v.<br><br>R.J. REYNOLDS TOBACCO COMPANY,<br>ISLAND SAINTS CORP.,<br>UNITED CORP. and<br>KAC357, INC.,<br><br>                  Defendants. | CIVIL NO.   SX-20-CV-722<br><br>COMPLEX LITIGATION DIVISION<br><br>(Grouped under Master Case<br> Civil No. SX-20-MC-090) |

### Cite as: 2023 VI Super 47P

### MEMORANDUM OPINION
### (Filed August 10, 2023)

**Andrews, Jr.,** *Judge*

## INTRODUCTION

¶1    Hayden Barry, a St. Croix resident, brings this action for damages against cigarette manufacturer R.J. Reynolds Tobacco Company (Reynolds), cigarette wholesaler Island Saints Corp., and cigarette retailers United Corp. and KAC357 Inc.  He alleges, as a result of smoking cigarettes manufactured and sold by the defendants, he contracted smoking related diseases including bladder cancer and heart disease.  Barry further alleges, in Counts 5 and 6 of his complaint, that Reynolds, along with other cigarette manufacturers, engaged in a fraud and conspiracy by misrepresenting the health effects and addictive nature of

cigarette smoking. He claims he relied on the misrepresentations, continued smoking and developed the diseases. Reynolds now moves to dismiss those claims for lack of personal jurisdiction. It maintains they do not arise out of any contacts it had with the Virgin Islands. For the reasons mentioned below, this Court concludes that it lacks personal jurisdiction over Barry's fraud claims in Counts 5 and 6 and will thus grant Reynolds' Motion to Dismiss.

## FACTUAL BACKGROUND

Defendant Reynolds is a cigarette manufacturing corporation organized under the laws of North Carolina with its principal place of business in the state of North Carolina. First Am. Compl. (F.A.C.) p 2, ¶ 4. It conducts business in the U.S. Virgin Islands. Id. Reynolds designs, manufactures, advertises, markets, and distributes cigarette products including Winston cigarettes. Id. Island Saints Corp. (a successor in interest to Bellows International and West Indies Company) is a wholesaler organized under the laws of the U.S. Virgin Islands with its principal place of business in the territory. Id. at 2, ¶ 5. It distributes and sells cigarettes in the U.S. Virgin Islands supplied by Reynolds. Id. at 2-3, ¶ 5; p 5, ¶ 14; p 6, ¶ 17. Wholesale distribution by Reynolds and Philip Morris USA Inc. (Philip Morris), another cigarette manufacturer, exceeded $1 million dollars per year from 1950 to present. Id. at 7, ¶ 19.

Plaintiff Barry lived in England from 1962 to 1978 when he moved to the U.S. Virgin Islands. Reply to Opp. to Mot. to Dismiss, Ex. A, H.; Barry Dep., Vol. I, 15-22; 48:1-3. He is unable to read. Id. Ex. B, H.; Barry Dep., Vol. II 36:15-18. Barry started smoking Marlboro cigarettes, manufactured by Philip Morris, in the late 1950s or early 1960s, and switched to Winston, manufactured by Reynolds, around 1978. FAC, p 4, ¶ 12. He continued smoking Winston until around 2001, and he was diagnosed with bladder cancer and heart disease which he claims was caused by smoking cigarettes. Id. at 4, ¶ 11.

Count 5 of Barry's complaint alleges Reynolds and other cigarette manufacturers carried out a scheme to deceive the American public, Barry, and others, as to the true dangers of cigarette smoke by, among other things:

a. concealing vast amounts of knowledge they possessed concerning numerous health dangers regarding cigarette smoking. F.A.C., pp 68-70, ¶ 284(a-s);

b. fraudulently marketing and selling cigarettes as 'filtered' knowing smokers wrongly believe that such cigarettes reduce the harms of smoking. F.A.C. p 70, ¶ 284(t); p 74, ¶ 294; and

c. knowingly making false statements or advertisements that smoking was not harmful, not been proven to be harmful, and that light, low tar and filter cigarettes were less harmful. F.A.C. p 75, ¶ 298.

He claims, during the course of his smoking history, he heard some or all of the false misleading statements made directly or indirectly by Reynolds, believed

some or all of them and relied on them to his detriment by smoking and continuing to smoke cigarettes which led to the development of bladder cancer and heart disease. F.A.C. pp 74-75, ¶¶ 297, 299.

Count 6 of Barry's complaint alleges Reynolds, other tobacco manufacturers, the Council for Tobacco Research, the Tobacco Industry Research Committee (TIRC), the Tobacco Institute, and others unlawfully agreed to:

a. conceal, omit and/or misrepresent, information regarding the health effects of cigarettes and/or their addictive nature with the intention that smokers and the American public, including individuals in the U.S. Virgin Islands and Barry would rely on this information to their detriment. F.A.C. p 76, ¶ 302;

b. conceal the harms of smoking cigarettes. F.A.C. p 76, ¶ 303; and

c. market and/or advertise filters, low tar cigarettes and ultra lights, as safer or less hazardous to health than non-filtered cigarettes; F.A.C. p 77, ¶ 305(a-c).

He claims during the course of his smoking history, he heard and believed some or all of the statements, relied on them to his detriment and continued to smoke cigarettes. F.A.C. p 78, ¶ 308.

## PROCEDURAL HISTORY

On March 27, 2023, Barry filed a first amended complaint against cigarette manufacturers Philip Morris and Reynolds, cigarette wholesaler Island Saints Corp. (f/k/a Topa Equities V.I. Corporation), and cigarette retailers, United Corp.

(d/b/a Plaza Extra East) and KAC357 Inc. (d/b/a The Market St. Croix, f/n/a Plaza Extra West).[1] He seeks damages based on Strict Products Liability (Count 1), Negligence (Count 3), Fraudulent Concealment and Misrepresentation (Count 5) and Civil Conspiracy (Count 6).[2] Id. at pp 64 – 79. On April 20, 2023, Reynold moved to dismiss Counts 5 and 6 of the First Amended Complaint. Barry filed an opposition on May 19, 2023, and Reynolds replied on June 16, 2023. This Court held a hearing on the motion on July 19, 2023, and took the matter under advisement.

## APPLICABLE LAW

Reynolds seeks dismissal of Counts 5 and 6 of Barry's complaint for lack of personal jurisdiction pursuant to V.I.R. Civ. P. 12(b)(2). On such motions, the plaintiff bears the ultimate burden to prove the court's jurisdiction. The nature of the burden depends on the court's decision whether to hold an evidentiary hearing. If a hearing is held, "the plaintiff must come forward with evidence to prove the court's jurisdiction by a preponderance of the evidence." Molloy v. Independence Blue Cross, 56 V.I. 155, 172 (V.I. 2012). However, where, as here, no hearing is

---

[1] On June 5, 2023, Barry voluntarily dismissed his complaint against defendant Philip Morris.

[2] Barry deleted Counts 2 and 4 (both included in the original complaint) from his First Amended Complaint.

held, "the plaintiff is only required to establish a prima facia case for personal jurisdiction." Id.[3]   Pursuant to this standard, "it is the plaintiff's burden to demonstrate the existence of every fact required to satisfy 'both the forum's long-arm statute and the Due Process Clause of the Constitution.'" Id. at 773, quoting United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 444 (1st Cir. 1993).   In making the prima facie determination, the court "must accept as true all of plaintiff's factual allegations that are supported by affidavits or other competent evidence, which would be admissible at trial and must resolve all factual disputes in the plaintiff's favor." Id. at 173.

In its motion, Reynolds does not challenge the Court's jurisdiction under the long-arm statute.   Its challenge focuses solely on the Due Process Clause of the Constitution. Mot. to Dismiss, p 2, n 2.   The Due Process Clause restricts this court's ability to exert personal jurisdiction over a nonresident defendant. Walden v. Fiore, 571 U.S. 277, 283 (2014); Asahi Metal Indus. Co. v. Superior Ct. of Cal., 480 U.S. 102, 108 (1987).   The 'constitutional touchtone' for determining whether the exercise of personal jurisdiction comports with due process "remains whether

---

[3] Except for pointing out that certain allegations are unsupported, Reynolds does not directly challenge the factual accuracy of Barry's allegations.   Its main claim is that the allegations are insufficient to establish specific personal jurisdiction.   As such, the Court sees no reason to hold an evidentiary hearing, and none was requested by the parties.

the defendant purposefully established 'minimum contacts' in the forum State."

Asahi, 480 U.S. at 108, quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462,

474 (1985). Such contacts, referred to as "purposeful availment", must be based

on "some act by which the defendant purposefully avails itself of the privilege of

conducting activities within the forum State, thus invoking the benefits and

protections of its laws." Id. at 109, quoting Burger King, 471 U.S. at 475.

Jurisdiction lies "where the contacts proximately result from actions by the

defendant himself that create a 'substantial connection' with the forum State." Id.

Thus, Due Process protects a defendant from being haled into a state court "based

on the "random, fortuitous, or attenuated" contacts he makes by interacting with

other persons affiliated with the State. Walden, 571 U.S. at 286, quoting Burger

King, 471 U.S. at 475 (stating "this 'purposeful availment' requirement ensures that

a defendant will not be haled into a jurisdiction solely as a result of 'random,'

'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or

a third person,"). With intentional torts, the exercise of jurisdiction "must be based

on intentional conduct by the defendant that creates the necessary contacts with

the forum." Id. at 286. The relied upon contacts, "must be the defendant's own

choice and not 'random, isolated or fortuitous." Ford Motor Co. v. Mont. Eighth

Judicial Dist. Court, 141 S. Ct. 1017, 1025 (2021). The plaintiff must show that

"the defendant deliberately 'reached out beyond' its home- by for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." Id. The plaintiff's claim, then, must arise out of or relate to the defendant's forum contacts. Id.

To assess whether the exercise of personal jurisdiction violates due process, the court must decide: 1) whether it has general jurisdiction (i.e., the right to hear all cases against a defendant regardless of where or how they arise) due to the defendant's continuous and systematic contact with the forum; and 2) whether the exercise of jurisdiction comports with fair play and substantial justice.[4] Molloy, 56 V.I. at 181. If the court does not find general jurisdiction it may nevertheless exercise specific personal jurisdiction on a claim-by-claim basis if: 1) the defendant has the requisite minimum contacts with the Virgin Islands (i.e., the defendant has purposefully directed its activities at the forum); 2) the claim arises out of, or relate to, at least one of those contacts (or activities); and 3) the exercise of jurisdiction comports with fair play and substantial justice. Id. at 181, 183,

---

[4] In his opposition, Barry does not address Reynold's lack of general jurisdiction argument. His arguments are, instead, based on specific jurisdiction. The Court thus considers any general jurisdiction argument as waived. Further, this Court has already concluded that Barry has failed to establish a prima facie case of general jurisdiction over Reynolds regarding his fraud and conspiracy claims under the initial complaint. Order Regarding R.J. Reynolds Motion to Dismiss Certain Claims, March 14, 2023, p 11. Nothing in Barry's First Amended Complaint alters this conclusion.

quoting D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009).   This is a claim-specific analysis. See Kulko v. Superior Ct. of Cal., 436 U.S. 84, 92 (1978) (stating, "the 'minimum contacts' test of International Shoe is not susceptible to mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present.").   The rationale of the test is "to ensure that the defendant has the requisite minimum contacts with a forum to receive 'fair warning" that the defendant may be haled into court in that forum to answer for its action in relation to those contacts." Id. at 183 - 84.   Where a plaintiff establishes that a defendant has the requisite minimum contacts out of which his or her claim arises, "the burden shifts to the defendant to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" Id. at 184, citing Burger King Corp., 471 U.S. at 477.

## LEGAL ANALYSIS

Defendant Reynolds claims this Court lacks personal jurisdiction over it to adjudicate Barry's fraud claims in Counts 5 (Fraudulent Concealment and Misrepresentation) and 6 (Civil Conspiracy).   In order for a Virgin Islands court to exercise personal jurisdiction, a plaintiff must establish: a) a prima facie case under the Virgin Island long arm statute; and b) a prima facie showing that the

defendant's due process rights would not be violated by being haled into a Virgin Islands court. Molloy, 56 V.I. at 173. Here, Reynolds challenges jurisdiction only on constitutional grounds. Opp. to Mot. to Dismiss, p 2, n 2. It claims this Court lacks general as well as specific jurisdiction over it. Barry makes no argument in support of general jurisdiction, hence the Court addresses only the issue of specific jurisdiction.[5]

Reynolds argues that Barry's complaint allegations are insufficient to establish that: a) Reynolds purposefully directed its activities at the Virgin Islands; and b) Barry's claims "arise out of or relate to" those activities. Mot. to Dismiss, pp 4 – 5. Barry responds that "Reynolds directed false statements to the Virgin Islands and sold and distributed its cigarettes to Virgin Islands entities for ultimate resale to the Virgin Islands public." Opp. to Mot. to Dismiss, p 3. This Court must thus decide whether: a) Reynolds has the requisite minimum contacts with the Virgin Islands (i.e., it has purposefully directed fraudulent misrepresentations at the Virgin Islands); 2) Barry's fraud claims in Counts 5 and 6 arise out of, or relate to, at least one of those contacts (or activities); and 3) the exercise of jurisdiction comports with fair play and substantial justice. Molloy, 56 V.I. 181, 183., quoting

---

[5] As indicated in Note "4" above, this Court considers any argument regarding general jurisdiction as waived.

D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009). Since this Court finds that Barry has failed to meet his burden with one or both of the first two factors, it does not address the third factor.

In an attempt to meet its burden to demonstrate the existence of minimum contacts required to satisfy the Due Process Clause, Barry points to several allegations in his complaint. This Court, however, will accept as true only those allegations that are supported by affidavits or other competent evidence, or that are undisputed for purposes of the instant motion. Molloy, 56 V.I. at 173. Barry's complaint allegations relative to Counts 5 and 6 are generalized. They do not specify the details of the alleged misrepresentations, identify the target of "filtered" or "ultra lights" cigarette marketing or sales, or of the alleged false statements/advertisements other than the "American Public". See F.A.C. pp 68 - 77. Such allegations do not allow meaningful analysis of specific jurisdiction. The Court thus focuses on the alleged contacts outlined in Barry's opposition to the motion to dismiss, and those made at oral argument, which contains details and some documentary support. As explained below, this Court finds all of Reynolds' alleged contacts insufficient to support specific personal jurisdiction.

1) Barry's Alleged Virgin Islands Contacts Are Insufficient to Establish Specific Personal Jurisdiction Over His Fraud Claims.

Barry alleges numerous contacts in support of his fraud claims in Counts 5 and 6. These contacts are addressed seriatim below.

A) Distribution of Winston Cigarettes to the Virgin Islands

Barry alleges Reynolds distributed Winston brand cigarettes to the Virgin Islands beginning as early as 1954. Opp. to Mot. to Dismiss, p 3. In support of this contact, he submitted a November 4, 1954 letter from Reynolds praising its employees for progress on the sale of filter-tip cigarettes and reporting that shipments were on the way to various places including the Virgin Islands. Id. Ex. A. Barry argues that this contact shows that Reynolds transacted business, and/or contracted to supply services or products, in the Virgin Islands and such contact establishes this Court's personal jurisdiction under the Long Arm Statute. Id. at 3. Such jurisdiction, he continues, "satisfies constitutional due process." Id. at 3 - 4.

Barry's position is in stark conflict with Virgin Islands jurisprudence which clearly requires two separate showings for a court to exercise personal jurisdiction. Merely satisfying the requirement of the Long Arm Statute does not ipso facto establish jurisdiction under constitutional due process. Separate and apart from statutory jurisdiction, a plaintiff must establish either general or specific jurisdiction. Molloy, 56 V.I. at 181. Further, Barry's fraud claims do not, as required by the

Long Arm Statute and under constitutional due process, arise out of the mere transacting of business or contracting to supply products by Reynolds. See Molloy, at 182 (stating, to establish specific jurisdiction the court must find that the defendant's claim arises out of the requisite minimum contacts.); 5 V.I.C. §4903(b). Accordingly, this contact, standing alone, is insufficient to establish specific personal jurisdiction over Counts 5 and 6. Johnson v. HuffingtonPost.com, Inc., 21 F.4th 314, 317-18 (5th Cir. 2021) (stating "a defendant may have many meaningful ties to the forum, but if they do not connect to the plaintiff's claim, they cannot sustain our power to hear it.")

B) National Broadcasting of False Statements and Misrepresentations

Barry alleges Reynolds used national mediums to broadcast false statements and misrepresentations on the national stage designed to reach across the entire United States and the Virgin Islands. Opp. to Mot. to Dismiss, p 6. Such mediums, he claims, included: i) national news networks like ABC, CBS, and NBC; ii) magazines with nationwide circulation; and iii) local newspapers like "the Avis, Daily News and other national newspapers" that were distributed and available for sale in the U.S. Virgin Islands. Id. Barry failed to support this particular allegation with affidavits or other competent evidence. Further, he failed to specify the details of the alleged false statements or misrepresentations, how

they were distributed to the Virgin Islands or who distributed them here, so as to allow for meaningful judicial analysis. Such conclusory unsupported allegations are insufficient to support specific personal jurisdiction. Molloy, 56 V.I. at 173.

Even if Barry were to establish specific instances of national fraudulent advertising that made its way to the territory, this Court would still lack personal jurisdiction over his claims absent a showing that Reynolds targeted the Virgin Islands. To establish specific personal jurisdiction, Barry must show that Reynolds purposefully directed the misrepresentations to this forum. As the New Jersey District Court stated in Oyebanji v. Palmetto Vacation Rentals LLC, when it found the plaintiff failed to establish specific personal jurisdiction,

> Oyebanji argues that Palmetto directed its activities at the forum by virtue of its "aggressive advertising nationwide." (Opp Br. at 5.) But absent evidence that Palmetto targeted its advertising efforts at New Jersey in particular, specific jurisdiction will not lie. *See Benitez v JMC Recycling Sys., Ltd.*, 97 F. Supp. 3d 576, 583 (D.N.J. 2015) ("[T]argeting the national market is *not* enough to impute jurisdiction to all the forum states.") (internal quotation marks and citation omitted).

Civil No. 20-cv-8983, 2021 U.S. Dist. LEXIS 159743, at *7 - 8 (D.N.J. Aug. 20, 2021). An intentional tort, as Barry alleges in Counts 5 and 6, requires a showing that the defendant "expressly aimed its tortious conduct at the forum." Danziger & De Llano, LLP v. Mogan Verkamp LLC, 948 F.3d 124, 139 (3d Cir. 2020) citing

IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 265-66 (3d Cir. 1998). Barry made no such showing.

   C) Creation of a "Controversy"

  Barry alleges Reynolds and its co-conspirators engaged in nationwide efforts to create a "controversy" regarding cigarettes and health. Opp. to Mot. to Dismiss, p 8. He claims they targeted the national market including the Virgin Islands by employing fraudulent advertisements and marketed materials, misinformation, and co-conspirator statements to convince Virgin Islanders to begin or continue smoking cigarettes. Id. As with his allegations in Section "B" above, Barry relies solely on his complaint allegations and failed to support them with affidavits or other competent evidence. They are thus insufficient to support specific personal jurisdiction.

   D) Marketing and Sale of Cigarettes in the Virgin Islands

  Barry claims that Reynolds distributed its cigarettes in the Virgin Islands and that its fraud could not have been consummated here without the sale and use of its cigarette products by Virgin Islanders. Thus, he argues, "Plaintiff's fraud claims 'arise out of or relate to' Reynolds' sale, distribution, marketing, advertising, and business activities in the Virgin Islands." Opp. to Mot. to Dismiss, p 10. The logic of this argument escapes the Court. Barry appears to argue that since Reynolds'

fraud could not have occurred without the sale and use of cigarette products in the Virgin Islands, Barry's fraud claims therefore arise out of or relate to such sale and use of cigarettes.   This Court disagrees.

To establish fraud or conspiracy to commit fraud as per Counts 5 and 6, Barry must prove that: i) Reynolds misrepresented a material fact, opinion, intention, or law; (ii) Reynolds knew or had reason to believe the representation was false; (iii) Reynolds made the representation for the purpose of inducing Barry to act or refrain from acting; (iv) Barry justifiably relied on the misrepresentation; and (v) Barry's reliance caused him a pecuniary loss. Love Peace v. Banco Popular de Puerto Rico, 75 V.I. 284, 291 (V.I. 2021).   Barry's claims arise out of an alleged fraudulent misrepresentation. It is that tortious conduct, i.e., the misrepresentation, that Barry must show Reynolds directed to the Virgin Islands. No misrepresentation is committed by the mere non- tortious sale of cigarettes by Reynolds or use thereof by Virgin Islanders. Further, the mere marketing and selling cigarettes to the VI, alone, do not put Reynolds on notice that it may be haled into VI courts to defend a fraud claim.   As such, Barry's fraud claims do not arise out of or relate to the mere sale, or use, of cigarettes in the Virgin Islands.

E) Cigarette Commercials Directed to the Virgin Islands

Barry alleges that Reynolds "purposefully directed cigarette commercials via

radio broadcast into the U.S. Virgin Islands, despite a U.S. ban on tobacco on all radio and television advertising that began in 1971." Opp. to Mot. to Dismiss, p 10. This contact/conduct, he claims, occurred in the mid-1970s through Reynolds' sponsorship of radio advertisements on a station (ZBVI) in nearby British Virgin Islands, that carried a form of its fraudulent conduct into the Virgin Islands. Id. The fraud, he argues, is the reporting of "the controversy".  Barry supports this allegation with a May 23, 1974 letter authored by an advertising agency (i.e., Post-Keyes-Gardner Inc.) stating that ZBVI is the No. 1 station in St. Croix and is tied for No. 2 in St. Thomas. Opp. to Mot. to Dismiss, Ex. B.  The letter further states that the competition, including Reynolds, used the station to advertise in 1973. Id. For several reasons this alleged contact fails to support specific jurisdiction:

i) Merely establishing that Reynolds advertised on ZBVI with the intention of reaching Virgin Islands residents does not establish a relevant contact as it devoid of any alleged misrepresentation;

ii) The letter establishes the  author's, not Reynolds', knowledge that ZBVI was the No. 1 or 2 station in the Virgin Islands;

iii) Based on the letter, Reynolds advertised on ZBVI in 1973 when Barry was not in the Virgin Islands;

iv) Barry does not allege that he saw nor heard the alleged advertisement in the Virgin Islands, and he did not arrive here until 1978, years after the advertisement;

v) The letter does not state what brand of cigarettes was

advertised; and

vi) The letter does not state the substance of any advertisement issued on behalf of Reynolds so as to permit determination as to whether Barry's claim arises therefrom.

Accordingly, the letter is incompetent to support specific jurisdiction.

### F) Nationwide Propagation of "The Controversy"

Barry also claims Reynolds engaged in a nationwide conspiracy of propagating "the controversy" that was reported in Virgin Islands newspapers and broadcasted on Virgin Islands radios and television stations. Opp. to Mot. to Dismiss, pp 10 - 11. He further argues that the contacts that Reynolds created with the Virgin Islands was its own choice and not random, isolated or fortuitous. Id. at 11. Barry relies on mere complaint allegations. He has not supported these allegations with any affidavit or competent evidence. Further, the allegation lacks the required specificity to assess specific jurisdiction. Barry has not specified when the alleged advertisement occurred, the content of the advertisement, whether or how Reynolds directed the advertisement to the Virgin Islands (i.e., created the contact) or whether Barry even saw or heard these news reports. This unsupported allegation is thus incompetent to support specific jurisdiction.

### G) Advertising of Filtered Cigarettes on Packs and In National Magazines

or News

Barry claims Reynolds purposefully directed tortious conduct toward the Virgin Islands "by the use of advertising 'filtered' cigarettes." Opp. to Mot. to Dismiss, p 11. Citing testimony by his expert, Robert Proctor, he argues that the mere sale of cigarettes to the Virgin Islands in packs labeled as "filtered" constitutes a fraudulent messaging directed to the Virgin Islands. Opp. to Mot. to Dismiss, p 11, Ex. C. Barry also relies on language in R.J. Reynolds Tobacco Co. v. Burgess, 294 So. 3d 910 (Fla. 4th DCA 2020), that "the term 'filter' was itself a deceptive statement," to support his argument. Such reliance is misplaced.

The Burgess court referred to the use of the term as part of the tobacco companies' aggressive promotion of filtered cigarettes generally. It was not referring to the placement of the word "filter" on cigarette packs. In fact, one year after Burgess, a sister 4th Circuit court noted that it was unable to conclude that labelling a cigarette that has a filter as 'filtered" is inherently fraudulent. Philip Morris USA v. Principe, 337 So. 3d 821, 831 n 10 (Fla. 3d DCA 2021) (stating "we are unable to conclude, based on our de novo review of this record, that either PM's manufacturing of filtered cigarettes, or its labelling a cigarette that has a filter as 'filter,' is inherently fraudulent."). Barry points to nothing on the cigarette packs that suggests smoking filtered cigarettes are safer. From all accounts, the

cigarettes were in fact filtered. This Court thus sees no false or fraudulent messaging communicated solely by placing the label "filter" on cigarette packs. The scenario would have differed if such labeling coincided with other messages/advertisements, directed at the Virgin Islands, stating that filtered cigarettes were safer. However, Barry has not shown any such messages directed by Reynolds to the Virgin Islands upon which he relied. This Court thus concludes that the mere labeling of cigarettes as filtered is not inherently fraudulent. If it was, personal jurisdiction over fraud claims against Reynolds would lie wherever its cigarettes end up.

In further support of this claim, Barry cites to testimony by his wife, Silvia Barry, that they "saw Winston cigarette advertisements, in Virgin Islands publications like Time Magazine, touting filter-tips removing harmful materials from cigarettes, which Plaintiff believed to be true." Opp. to Mot. to Dismiss, p 12. He supports this allegation with Mrs. Barry's deposition testimony. Id. Ex. D. A review of her deposition reveals the following statements by Mrs. Barry:

a. she and Barry had conversations about filter tips taking out bad stuff from cigarettes;

b. she saw, and discussed with Barry, advertisements for Winston cigarettes that had filtered tips, after they moved to the Virgin Islands;

      c. based on the advertisements, Barry believed that filtered tip cigarettes took out all the bad stuff;

      d. she and Barry saw, and discussed news programs on TV where a Black lady said there is no harm in smoking;

      e. Barry smoked Marlboro filtered cigarettes before he switched to Winston;

      and

      f. she saw Winston cigarette advertisements in Time Magazine.

Id. Ex. D (Dep. of S. Barry). Mrs. Barry also testified that while in England she and Barry saw, and discussed, an advertisement about filtered tip cigarettes in a magazine at a doctor's office. Reply to Opp. to Mot. to Dismiss, Ex. B (Dep. of S. Barry at 36 – 37. According to Barry, he switched to filtered tip cigarettes because he thought, based on advertisements, that it filtered out nicotine and was safer. Id. at 12. This evidence demonstrates Barry's reliance on an advertisement regarding filtered tip cigarettes he learned about while in the Virgin Islands. The only source mentioned is Time Magazine. Barry does not explain how the magazine made it to the Virgin Islands. There is thus no evidence that Reynolds created this contact. Any third party (person or business) in the Virgin Islands could have subscribed to Time Magazine and thereby cause its presence in the territory. Barry, however, has not linked the magazine's presence in this forum to

Reynolds. This contact is thus insufficient to support specific personal jurisdiction over Barry's fraud claims.

Other courts have found the absence of jurisdiction under similar circumstances. In Miller Indus. Towing Equip. v. NRC Indus., the plaintiff sued NRC Industries (NRC), in Tennessee, for patent infringement related to towing vehicles. NRC moved to dismiss for lack of personal jurisdiction arguing lack of sufficient forum contacts. Plaintiff claimed that NRC's maintenance of advertisements regarding wreckers in two magazines that had many Tennessee subscribers was sufficient. The Tennessee District Court held that

> there is no evidence that Tennessee was specifically targeted in these advertisements. Instead, these advertisements are targeting the entire national market. Therefore, these advertisements do not support jurisdiction.

No. 1:19-CV-00095, 2020 U.S. Dist. LEXIS 67365, at *9 (E.D. Tenn Apr 16, 2020). Here Barry likewise points to advertising that targets the entire nation, not specifically the Virgin Islands.

In Chorost V. Rotor Am. Inc., the plaintiff filed suit in Arizona against Spain registered Rotor Componentes Technologicos due to a bicycle crash. He had purchased the bicycle as a result of internet advertisements he viewed while in Arizona. The advertisements were placed in publications with national distribution.

In finding it was without jurisdiction to entertain the plaintiff's claim, the Arizona

District Court stated

> There is no evidence that digital advertising targeted Arizona; rather,
> it was available to people in any forum.

No. CV-21-235, 2022 U.S. Dist. LEXIS 218451, at *20 (D. Arizona Aug 8, 2022);

accord Ogdon v. Grand Canyon Univ. Inc., No. 1:20-cv-709, 2022 U.S. Dist. LEXIS

51585 (E.D. Calif. Mar. 22, 2022) (declining to exercise personal jurisdiction over

alleged fraudulent advertising claim and stating, "GCE targets their advertisements

to anyone in the country who searches for online degree programs, not to

Californians specifically.  Such nationwide marketing activities do not show that

GCE purposefully directed its activities to California.").  Similarly, Reynolds'

nationwide marketing activities, alleged by Barry, do not show that Reynolds

purposely directed its activities to the Virgin Islands.

In Johnson v. TheHuffingonpost.com, Inc., plaintiff Charles Johnson sued

defendant HuffPost, in Texas, alleging it posted libelous statements about him on

its website.  HuffPost was a citizen of Delaware and New York, not Texas.

HuffPost moved to dismiss for lack of personal jurisdiction.  Johnson argued that

HuffPost's website is visible in Texas; it sells ad-free experience and merchandise

to everyone; including Texans, Texas had contracted with HuffPost to show ads

on its site; and HuffPost collected information about its viewers including their location. 21 F.4th 314, 317 (5th Cir. 2021). The Fifth Circuit concluded that, though HuffPost had an interactive website, its story about Johnson had no ties to Texas. Id. at 319. It reasoned that the mere accessibility of HuffPost's website in Texas where Texans could access it did not show HuffPost purposefully availed itself of Texas. Id. at 320. Likewise, the mere availability of magazines or news in the Virgin Islands containing false representations does not show Reynolds directed a misrepresentation to this forum.

H) Publication of TIR Committee's Pledge in Virgin Islands Daily News

Barry claims that Reynolds directed its fraudulent conduct into the Virgin Islands through statements by its industry spokespersons that were published in Virgin Islands newspapers. Opp. to Mot. to Dismiss, p 12. He cites to a June 25, 1954 article printed in the Virgin Islands Daily News stating that

> The leading cigarette manufacturers, have formed the Tobacco Industry Research Committee and pledged its "aid and assistance to the research effort into all phases of tobacco use and health."

Opp to Mot. to Dismiss, Ex. E. Barry argues this statement was false as the committee's purpose was to the contrary. It was "to assist in spreading the false 'controversy' that cigarettes are not addictive and cigarette smoke is not dangerous." Id. at 13. For several reasons, Barry's argument lacks merit.

The alleged fraud is the pledge by the research committee. The article does not state where or when the pledge was made. It represents a news reporter repeating the pledge. This does not establish that the committee or Reynolds directed the pledge anywhere. Further, the article represents news that the Virgin Islands Daily News, not Reynolds, chose to print in the Virgin Islands. The mere fact that the article appears in the Virgin Islands does not establish that Reynolds was responsible for its appearance. Additionally, Barry was not in the Virgin Islands in 1954. He did not arrive until 24 years after the publication (i.e., in 1978). Thus, even if Reynolds directed the article to the Virgin Islands, Barry could not have relied on it. In fact, he does not allege that he saw, heard about, or relied upon that article. As such, his fraud claims do not arise therefrom. Accordingly, this contact, involving an alleged false pledge reported in Virgin Islands newspapers, does not support specific personal jurisdiction over Barry's fraud claims.

I) Publication in St. Croix Avis, of TIRC's Response To Environmental Protection Agency (EPA) Draft Report on Second-hand Smoking

Barry claims Reynolds carried its fraudulent misrepresentations into the Virgin Islands through the TIRC's response to a draft finding by the EPA that second-hand tobacco smoke causes 32,000 heart disease deaths among non-

smokers. Opp. to Mot. to Dismiss, p 13. Barry claims the TIRC pressed EPA to withdraw their findings claiming that it would "be most inappropriate to include this paper in its present from in EPA Compendium of Technical Information." Id. The New York article was reported in the St. Croix Avis on June 17-18, 1990. Ex. F.

This Court is not convinced that TIRC's mere statement that it would be inappropriate for EPA to include its finding "in its present form" in EPA's Compendium of Technical Information, constitutes a fraud. Even if it did, Barry does not explain how Reynold's directed the article to the Virgin Islands. In fact, the statement was directed at EPA, not the general public or the Virgin Islands. It appeared in an article that the St. Croix Avis chose to report on. Further, Barry does not allege that he saw, heard about, or relied upon that article. As such, his fraud claims do not arise therefrom. Accordingly, this contact does not support specific personal jurisdiction over Barry's fraud claims.

J) Publication, in St. Croix Avis, of Industry Statement Regarding Filters
   Protecting Health

Barry submits an Oregon article published in the St. Croix Avis on November 24-25, 1988, as a contact in support of his fraud claim. It contains a statement by the tobacco industry that filters are "the greatest health protection in cigarette history". Id. Ex. G. This represents yet another industry article that the St. Croix

Avis chose to report on. Barry has failed to show that Reynolds directed the statement to the Virgin Islands. Even if it did, he does not allege that he saw, heard about, or relied upon, that particular article. As such, his fraud claims do not arise therefrom. Accordingly, this contact does not support specific personal jurisdiction over Reynolds for Barry's fraud claims.

K) Publication of TIRC's Pledge in St. Croix Avis

Barry claims that Reynolds continued its fraudulent misrepresentations into the Virgin Islands as reflected in a March 16, 1979 advertisement in the St. Croix Avis. There, the tobacco industry stated that the trend to filtered low-tar cigarettes was to thank for a reduction in indicators of disease and that most non-smokers are O.K. with smokers. Opp. to Mot. to Dismiss, p 14; Ex. H. These statements, Barry argues, were knowingly false. He fails, nevertheless, to explain how the article appeared in the St. Croix Avis. This is another example of a Virgin Islands newspaper reporting national news. The mere appearance of an article containing statements by the tobacco industry does not establish that Reynolds directed the statements to the Virgin Islands. Even if it did, Barry does not allege that he saw, heard about, or relied upon, that article. As such, his fraud claims do not arise therefrom. Accordingly, this contact does not support specific personal jurisdiction over Barry's fraud claims.

L) Advertisements Designed for the Virgin Islands

Barry claims that Reynolds tailored specific marketing advertisements to the Virgin Islands for its Winston cigarettes. Opp. to Mot. to Dismiss, p 14.   In the 1970s and later, he claims, Reynolds ran advertisements in the Virgin Islands Daily News depicting happy, healthy energetic people enjoying the day at Virgin Islands beaches or hotels.   In support, he submitted copies of 12 advertisements. Id. Ex. "I".   Three of them are dated 1973 (i.e., before Barry arrived.)   The other nine are dated 1978.   None of them contain any fraudulent representation.   In fact, each one clearly states a warning from the Surgeon General that "cigarette smoking is dangerous to your health." Id.   These ads, even if directed to the Virgin Islands by Reynolds, contain no misrepresentation to support Barry's fraud claims.   His claims thus do not arise out of such contact.

M) Television Appearance by Tobacco Spokespersons in St. Croix

Barry claims he saw "tobacco spokespersons" appearing on television in St. Croix stating that cigarettes were not harmful. Opp. to Mot. to Dismiss, p 14.   He does not identify a particular advertisement or the date or time period when he saw it.   Instead, he identifies a program aired on 20/20 ABC News that was carried by Virgin Islands affiliate WSVI TV in 1983 "that matches the description" he testified about in his deposition. Id.   The spokesperson, Barry claims, stated that cigarettes

may or may not be harmful, the case is still open, and we don't know. Id. at 15.

Here, it is unclear whether Barry saw the particular ABC News advertisement aired in 1983. Even if he did, he has submitted no affidavit or other competent evidence that he relied on any of these advertisements to start or continue smoking. His generalized complaint allegations are insufficient for this purpose. Further, as explained above, the re-broadcasting of national news by a Virgin Islands news agency does not establish that Reynolds directed the news to this territory. Since the broadcasting of the news in this forum is not shown to be a contact created by Reynolds, it cannot serve as a basis for specific personal jurisdiction.

Barry points to other misrepresentations by tobacco spokespersons aired in the Virgin Islands. Id. He submits no affidavit or competent evidence that he relied on those statements. They too represent re-broadcastings of national news and do not establish that Reynolds directed them to the Virgin Islands forum.

2) Barry's List of Supportive Cases Are Inapposite

Barry further supports his argument for specific jurisdiction by citing to 11 cases he claims, "found personal jurisdiction over the fraud and conspiracy, even though the Tobacco Companies' instituted a nationwide campaign; exactly because this fraud and conspiracy entered into every State and Territory of the

United States." Opp. to Mot. to Dismiss, pp 6 -8, n 7.   A review of each and every one of those cases reveals no such finding.   Each of them recites findings or evidence that tobacco companies engaged various attempts to deceive the American public regarding the dangers of cigarette smoking.   Not one, however, involved an issue or finding regarding personal jurisdiction or that any such finding was based on the entry of fraud and conspiracy into every state and territory or on nationwide advertising.   Barry's reliance on those cases is thus totally misplaced. They are inapposite and irrelevant to any issue before this Court.[6]

---

[6] Barry submitted a list of other cases, after the hearing in this matter, some of which he argued during the hearing, for consideration by the court.   Each is addressed in turn.

Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984) and Walden v. Fiore, 571 U.S. 277 (2014) were cited to support the notion of national advertising entering the forum state.   In Keeton, the defendant, Hustler Magazine, sold over 10,000 copies of its magazines each month to the forum state in which it was sued.   The plaintiff claimed five issues of the magazine contained libelous statements of her.   The court found that Hustler's regular circulation of magazines in the forum state supported its jurisdiction.   Here no circulation of any national magazine has been shown to have been performed by Reynolds. Keeton is thus clearly distinguishable.

Barry cited Ford Motor Comp. v. Mont. Eighth Judicial Dist. Ct., 141 S. Ct. 1017 (2021) to support jurisdiction over other wrongful conduct related to negligence and products liability.   Ford is distinguishable, however.   There, the Supreme Court found jurisdiction in the forum states in which the defendant Ford was sued because Ford had extensively promoted, sold, and serviced the same type of vehicles in the forum state. Id. at 1032.   It did not matter, as Ford claimed, that the plaintiffs bought their Ford vehicles in other states.   The court found there was an affiliation between Ford, the forum, and the litigation.   Here, there is no relation between Reynolds mere sale of cigarettes in the Virgin Islands and Barry's fraud claims.   A closer analogy to Ford would be the argument that Barry could bring his negligence and products liability claims in the Virgin Islands even if he purchased his Reynolds cigarettes outside the Virgin Islands.   This rationale would apply since Reynolds had other related connections here, i.e., the sale of its cigarettes. The connection to his fraud claims, however, are absent.

## CONCLUSION

In sum, all of Barry's alleged contacts are insufficient to establish specific personal jurisdiction for one or more of the following reasons:

a. they are unsupported by affidavit or other competent evidence;

b. they contain no fraudulent misrepresentation;

c. Barry has not established that he was aware of or relied upon them;

d. Barry's fraud claims do not arise out of, or relate to, the contacts; and

e. Barry has failed to show that Reynolds created the contacts or directed them to the Virgin Islands forum;

With respect to fraudulent messages allegedly circulated through national magazines, that ended up in the territory, Barry has failed to show Reynolds was "circulating magazines to "deliberately exploit' a market in [this] forum." Walden, 571 U.S. at 285.   As the Walden court stated, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum state." Walden, 571 U.S.

---

O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007) was cited to show the need to consider jurisdictional reasonableness.   The Court finds this case not relevant as it does not reach the issue of whether jurisdiction comports with fair play and justice.

Having reviewed Walden v. Fiore, 571 U.S. 277 (2014) and Molloy V. Independence Blue Cross, 56 V.I. 155 (2012), the Court sees no principle that mitigates in favor of jurisdiction under the facts of the instant case.

at 291.   This Court thus concludes that Barry has failed to establish a prima facie case for jurisdiction over his fraud claims in Counts 5 and 6. Accordingly, the Court will grant Reynolds' motion to dismiss Counts 5 and 6 of Barry's complaint.   An order consistent herewith will be issued.

_____
ALPHONSO G. ANDREWS, JR.
Superior Court Judge

**Attest:**
**TAMARA CHARLES**
CLERK OF THE COURT

_____
COURT CLERK III

08-10-2023
_____
DATE